## MITCHELL v. MOORE.

1. A trustee residing in Alabama during the rebellion, who kept no separate
accounts of the trust fund, but invested it in his own name, cannot charge
it with the losses he sustained from payments made to him in Confederate
money.

2. Where the allegations of a bill charging a breach of trust, and praying for an
account by the trustee, the payment of the amount found due, his removal,
and general relief, are sustained by the proofs, — *Held*, that the appointment
of a new trustee, and the decree for the payment to him of the principal
of the fund, is necessary to carry into full effect an order for the removal of
the old trustee.

APPEAL from the Circuit Court of the United States for the
Southern District of Alabama.

In November, 1873, Catharine Moore, by L. D. Moore, her
husband and next friend, filed her bill against Daniel Mitchell,
her trustee, charging him with neglect in the execution of his
trust, and with loss of the fund.

This trust was created by James Mitchell, her father, who,
by will, appointed said Daniel and one Baskin his executors,
and bequeathed to them a negress and her child, in trust for

Catharine. The hire of these was to be paid to her annually; and if the executors should deem it proper to sell the slaves, then the interest on the purchase-money was to be paid annually to her. The fifth item provides, in case she should survive her husband, the slaves were to be delivered to her, or, if they were sold, the purchase-money was to be paid to her.

The will further provides that the executors shall sell the real estate of the testator, the proceeds to be equally distributed among the children named in the will. " The share of Catharine to be held in trust by my executors, and the interest accruing annually to be paid to Catharine, as specified in the fifth item, and finally disposed of in the same manner as the property directed in the fifth item."

James Mitchell died in Sumter County, Alabama, in 1856, and immediately thereafter the executors qualified under the will.

The bill avers that there was a large amount due her for the hire of the slaves, and that the executors, on a settlement with the Probate Court, were charged with the sum of $9,204.60, which, divided into shares according to the will, left them indebted to the complainant in the amount of $1,150.54; that they have neglected for the past eleven years to pay interest, and mingled the fund with their own, and used it, to her great loss; that Baskin resides beyond the jurisdiction of the court; and that said Daniel had "almost if not the exclusive management of the trust and the property created thereby."

The prayer is that the trust be established, and an account taken of what is due for principal and interest; that the trustees be removed; and that Mitchell "may be decreed to pay to your oratrix whatever she may be found entitled to under said trust."

To this is added a prayer for general relief.

An amended bill avers that the executors had sold the slave girl and her child before the late war, and had never accounted for the hire or the purchase-money.

The answer sets forth that said Daniel accepted the trust purely for the accommodation of his sister, the complainant, and by agreement with his father was not to charge any

compensaticn for his services; that he never received or made any claim therefor; and that by this agreement he was not to be charged with any loss in the execution of the trust, if he should manage it as he did his own affairs. ·

It admits the sale of the negress and her child in July, 1856, for the sum of $1,375.25, and avers that up to 1862 said Daniel accounted annually for the interest thereon; that payment was not subsequently made, as there was no communication during the war between Alabama and Texas, in which latter State his sister then resided; and that the money was loaned out on good security, and was during the war paid to him in Confederate money, then the only currency. It further avers that " all of the said money, together with a large sum owned by defendant, became valueless and lost to him; " that the complainant's distributive share, $1,150.54, was loaned out on good security, and the interest thereon annually paid up to 1862; and that the amount due on the loan was paid to him in March, 1863, in Confederate currency, which at that time was worth three and a half for one in United States currency.

A decree was rendered against Mitchell, removing him as trustee, and adjudging that he pay the principal to a new trustee.

Mitchell appealed to this court, assigning for error the ruling of the court below that he was liable for the amount decreed against him, and that the principal amount be paid to a new trustee.

The remaining facts are stated in the opinion of the court.

*Mr. Philip Phillips* for the appellant.
*Mr. Conway Robinson* and *Mr. Leigh Robinson, contra.*

MR. CHIEF JUSTICE WAITE delivered the opinion of the court. ·

There can be no doubt that the trust fund in this case was always used by the defendant as his own, and that all investments were made by him in his own name, with nothing whatever to indicate an appropriation to the purposes of the trust. When inquired of by the complainant in October, 1860, in respect to the trust, the defendant wrote: " If you will be contented I will fix your money so that you can see it any instant. But as the time is now, it is in a better fix now than

it would be if you had it." In his deposition, taken in his own behalf, when upon cross-examination he was required to make a full, complete, and detailed statement of his execution of the trust, he said : " I kept no separate account of the trust fund after it came into my hands. I accounted for the annual interest to the agent of the complainant, and was ready to pay over the principal in the event of the death of A. L. D. Moore, which was the time fixed by the will of my father for me to pay over to my sister the *corpus* of the trust. I thought this was all I was required to do, and, therefore, kept no separate and distinct accounts of the trust fund, and cannot give the dates of the loans, or other particulars inquired about. . . . When necessary, I put some of my own funds with it to make out the sum a borrower might wish to get, and kept no separate accounts of it, and can furnish none."

Under these circumstances, clearly the defendant is in no condition to charge the trust with the losses he has sustained from payments to him in Confederate money. As long ago as 1681, it was said in argument, and approved by the then Lord Chancellor of England, in *Dashwood* v. *Elwall*, 2 Ch. Cas. 56, that " if an executor hath orphan's or other men's money in his hands, and hath power to lend it, if he do so, and take security in his own name, which faileth, he shall answer the debt in his own money, unless that he indorse the bond, or do some other thing, at the time of lending the money or taking the security, which may doubtless declare the truth," and this because " heed was to be taken that we make not such examples under which dishonest men may shelter themselves." If this were not the rule, it was also said, " It will be in the power of one who deals for several persons and for himself also, taking security by bond in his own name, if any of the debts fail, to gratify whom he pleaseth with good securities, yea, himself, and play the securities, good or bad, into his own hands, or what he pleaseth." Thus were set forth in the language of the time a rule, and the reason of it, by which courts of equity have universally required trustees to account; and it can never be departed from, without danger that wrong will be done. *Massey* v. *Banner*, 4 Madd. 413 ; *Wren* v. *Kirton*, 11 Ves. Jr. 377 ; *McAllister* v. *The Commonwealth*, 30 Pa. St. 536 ; *Stanley's Appeal*, 8 id. 431.

This disposes of the first assignment of error. There is no dispute as to the amount of the trust fund, and no complaint is made of the rate of interest for which the defendant has been decreed to account, if he is liable to account at all.

The second assignment of error is to the effect that the court could not direct the payment of the principal sum to a new trustee, because such a decree was inconsistent with the specific relief prayed for. The prayer is for an account, the removal of the old trustees, the payment to the complainant of the money she is entitled to, and for general relief. There is no specific prayer for the appointment of a new trustee, or the payment of the principal of the fund to him when appointed; but such relief is necessary, in order to carry into full effect an order for the removal of the old trustees.

*Decree affirmed.*