## Bishop v. People's Bank & Trust Company.

(Decided February 22, 1927.)

### Appeal from Union Circuit Court.

1. Trusts—Trustee Held Not Required to Pay Interest which it Did Not Collect Due to Borrower's Failure, Where Agreement Required Payment Out of Interest Collected.—Under trust agreement, whereby money was transferred to trustee to be invested and interest collected, and "out of which interest so collected" payment made to plaintiff, trustee was not required to pay interest which it did not collect because of borrower's failure, notwithstanding clause relieving it from payment of interest on money not loaned after using best efforts to loan it.

2. Trusts—Trustee, Unable to Loan Funds After Due Diligence, was Not Liable for Interest at Common Law.—Under common law, trustee would not be liable for interest on trust funds loaned, when it was unable to loan money after due diligence had been exercised.

3. Trusts—Instruction that Trustee was Liable for Interest Not Collected, if Loss was Due to Failure to Exercise Care of Ordinarily Prudent Business Man in Selecting Investment, Held Proper.—Instruction that trustee was liable for interest not collected on trust funds, due to borrower's failure if loss was due to its failure to exercise care of ordinarily prudent and careful business man in selecting safe investment, held proper.

4. Trusts—Trustee May Invest Funds in Mortgage Bonds Secured by Lands.—Trustee may properly invest trust funds in mortgage bonds secured by lands.

5. Evidence—Evidence of Sale Value of Other Lands in Vicinity Held Admissible to Show Value of Particular Land.—Evidence of sale value of other lands in vicinity held admissible to show by comparison that particular land was of value claimed by bank, which had loaned trust funds with such land as security.

6. Trusts—Evidence that Borrower of Trust Funds, who Failed, was Indebted to Trustee Before Loan, Held Property Excluded in Action for Trustee's Failure to Pay Interest.—In action against trustee for failure to pay interest not collected, due to borrower's failure, evidence that borrower was largely indebted to trustee before loan of trust funds held property excluded.

7. Appeal and Error—Admission of Incompetent Evidence, Subsequently Withdrawn, Held Not Error.—Admission of incompetent evidence, which was later withdrawn, held not error, where jury were admonished not to consider it.

8. Witnesses—In Action for Trustee's Failure to Pay Interest, Trustee's Counsel May Testify as to Making of Trust Agreement Without Violating Confidential Relation with Plaintiff.—In action against trustee for failure to pay interest not collected, due to borrower's failure, counsel for trustee may testify as to making of trust agreement and drafting of contract without violating confidential relation with plaintiff.

9. Trusts—Any Evidence Shedding Light on Issues, is Admissible in Action for Trustee's Failure to Pay Interest, Where Both Parties to Trust were Present and Participating.—Where both parties to trust agreement were present and participating in action against trustee for failure to pay interest, any fact known to any person present could be given in evidence, if it shed light on issues involved.

HENSON & TAYLOR for appellant.

ALLEN, HARRIS & ALLEN and FLOURNOY & FLOURNOY for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

This appeal involves the construction of a trust agreement, reading:

"THIS INSTRUMENT OF WRITING, CONTRACT AND AGREEMENT, made and entered into in duplicate (6)

this the 13th day of January, 1920, by and between Rebecca N. Bishop, of Murray, Calloway county, Kentucky, widow and devisee of John P. Bishop, deceased, and Jennie Long and Lucy Stevens of Henshaw, Union county, Kentucky, and Ruth Durick, of Murray, Calloway county, Kentucky, and children and devisees of John P. Bishop, and Ruth Cox of Bellevue, Campbell county, Kentucky, one of the children of Laura Bishop Cox, now deceased, who was a child and devisee of John P. Bishop, parties of the first part, and the People's Bank & Trust Company, trustee for the parties of the first part, party of the second part:

"WITNESSETH: That the parties of the first part have this day placed in the hands of and delivered to the party of the second part, in trust for themselves, the sum of twenty-five thousand, seven hundred and thirty ($25,730.67) and 67/100 dollars, the receipt of which is hereby acknowledged by the party of the second part, and upon the following terms, uses and conditions, and for the following purposes, to-wit.:

"The party of the second part is to pay out of said principal sum whatever federal or state taxes, if any, with which the same now be chargeable, and will loan out the balance of said principal sum from year to year, or for such other time as it may deem proper, for and during the natural life of the said Rebecca N. Bishop, or until she shall marry again, whatever event shall first occur, at the legal semi-annual interest as provided by the laws of Kentucky, the interest to be collected semi-annually by the party of the second part, and out of which interest so collected by the party of the second part it shall pay, first, any taxes chargeable against the estate or interest of Rebecca N. Bishop in said fund, or the annual interest thereon, and shall then retain and pay to itself a commission of five per cent (5%) on the annual interest on said fund collected and paid out by it, and will then pay the remainder of the said annual interest to the said Rebecca N. Bishop, and will so continue to do for and during the natural life of said Rebecca N. Bishop, or until she shall marry, whichever event shall first occur, and upon the death or remarriage of the said Rebeca N. Bishop, the party of the second part shall pay out and dis-

tribute the said principal sum as follows: Two-sevenths (2/7) thereof to Jennie Long; two-sevenths (2/7) thereof to Ruth Durick; two-sevenths (2/7) to Lucy Stevens; one-seventh (1/7) thereof to Ruth Cox, one of the two children of Laura Bishop Cox, deceased.

"The sum of twenty-five thousand, seven hundred and thirty ($25,730.67) and 67/100 dollars is the consideration paid to the parties of the first part by Bert Watkins for the conveyance to him by them of certain interests in land by deed dated September 10, 1919, and recorded in the Union county clerk's office in deed book —, at page—.

"It is further agreed that the party of the second part shall not be entitled to retain or receive any commission on the principal of said fund, but shall pay the whole thereof to the parties entitled thereto as above recited.

'It is further agreed as consideration and part of this instrument that the party of the second part shall use and employ its best efforts to keep said fund loaned out, but if after using such efforts it shall be unable for any time or times to loan said fund, it shall not be held responsible or liable for interest thereon for such time or times as it shall have been unable to make loan of said fund.

"It is further agreed that the time for the commencement of said fund shall be of date January 2. 1920."

In 1924 the bank and trust company, as trustee, failed to pay to Mrs. Bishop the interest upon the fund in its hands, and she instituted this action against it to recover $1,543.84 alleged to be the amount of the interest then due and unpaid, on the theory that the trust agreement above quoted was an absolute undertaking on the part of the bank and trust company not only to repay the principal but to pay the interest semi-annually without defalcation. The lower court, considering that the trust company was liable only for the failure to exercise care and diligence in the loaning and handling of the money and the collection and paying over of the interest, submitted the question of care and diligence on the part of the trustee to the jury, and the jury found and returned a verdict for the bank and trust company, and Mrs. Bishop appeals.

For appellant it is now argued that appellee, bank and trust company, unconditionally agreed to loan out the fund for appellant, collect the interest, pay the taxes, retain a commission for handling the money, and then pay to the appellant the balance of the interest, the contract providing that appellee shall not be liable for interest for the time it could not loan the fund, hence it is no defense for appellee to say that it loaned out the fund to a party who shortly afterwards failed and was unable to pay the interest. It further says that the court erred in allowing the bank and trust company to introduce evidence on the question of proper care and diligence in the loaning of that fund on real estate, and especially with respect to that showing the value of other property over the country.

The principal battle between counsel is over the construction of the instrument; the second is on the instructions given by the court to the jury; and third, and less important, is on the competency of evidence. The trust agreement provides that the parties of the first part have this day placed in the hands of and delivered to the party of the second part, in trust for themselves (first parties), the sum of $25,730.67 upon the following terms, uses and conditions, which seem to establish beyond question that the money was not loaned by Mrs. Bishop and her children to the bank and trust company but was placed with them "in trust for themselves" upon the "terms, uses and conditions" named in the writing. The "terms, uses and conditions" were that the bank and trust company was to pay taxes, if any due, out of the funds, and then loan out the balance of the principal from year to year, or for such time as the bank and trust company deemed proper, not to exceed the natural life of Mrs. Bishop, at the legal semi-annual interest, as provided by law, the interest to be collected semi-annually by the party of the second part, and it shall pay, first, taxes against the estate and the interest, then retain five per cent (5%) commission for its services as trustee, and pay the remainder of annual interest to Mrs. Bishop so long as she lives and at her death to pay out and distribute the balance according to the rights of the children as set out in the writing. We are not now concerned with the rights of the parties with respect to the original sum placed in the hands of the trustee, but will confine ourselves to the rights of the parties with respect to the interest collected

and to be collected upon the money loaned by the trust company. The question is, must the bank and trust company pay the interest whether it collects it or not? Is it bound absolutely and unconditionally to pay the interest although the person to whom it has loaned the money has failed to pay the interest? Concededly the bank and trust company is trustee merely. It did not borrow the money from Mrs. Bishop and her children but merely undertook to act as trustee for her and then to take and loan the money and collect the interest semi-annually, "and out of which interest so collected by the party of the second part, it shall pay" the taxes, its commission, and the remainder to Mrs. Bishop. It would seem from the language of the contract that it should pay to Mrs. Bishop only such intreest as was collected by it, for the contract specifically says that the bank and trust company shall loan the money, collect the interest semi-annually "and out of which interest so collected by it" the payment to Mrs. Bishop shall be made. So, if no interest is collected by the bank then it is not bound to pay, unless, of course, it failed to exercise proper care and diligence in the loaning of the money.

Nor do we think that the paragraph in the contract reading:

> "It is further agreed as consideration and part of this instrument that the party of the second part shall use and employ its best efforts to keep said fund loaned out, but if after using such efforts it shall be unable for any time or times to loan said fund, it shall not be held responsible or liable for interest thereon for such time or times as it shall have been unable to make loan of said fund,"

militates against the construction and interpretation of the contract we have just stated but enlarges the rule somewhat and exempts the bank and trust company from the payment of interest for all periods it was unable to loan the money, or some part of the money, after it has used its best efforts so to do. Certainly under the common law the bank and trust company would not have been liable for the interest on the loan when it was unable to loan the money after due diligence had been exercised to do so, and this paragraph in the contract was but a statement of the rule at law.

In submitting the question of due care and diligence the court stated the substance of the terms of the written contract, and then said:

"2. You will take as true that the defendant invested said trust funds in real estate bonds issued by one Bert Watkins in the aggregate amount of $40,000.00, secured by first mortgage upon about 434 acres of land situate in Union county, Kentucky, dated January 2, 1920, due at the end of four years and six months, bearing 6% interest from their date until paid, payable semi-annually from their said date; that defendant collected said interest due on said bonds up to and including July 2, 1923, and paid all of same due to plaintiff to her according to the terms of said contract, but that said Watkins has not paid and defendant has not collected nor paid to plaintiff any interest thereon accruing after July 2, 1923.

"3. It was the duty of the defendant, in making any investment of said fund, to use such care and prudence in selecting a safe and secure investment thereof as an ordinarily prudent and careful business man would usually exercise under circumstances like or similar to those proven in this case.

"4. If you believe from the evidence that the defendant, in investing said funds in said Watkins bonds, failed to exercise the degree of care and prudence required of it by instruction No. 3, and that, as a direct result of such failure, if any, it has failed to collect the interest on said investment since July 2, 1923, then the law is for the plaintiff and you will so find."

These instructions fairly submitted the issues made by the pleadings to which the proof was directed. If the bank and trust company exercised that degree of care and prudence in the handling of the funds as is generally employed by a man of ordinary prudence and skill in the management of his own estate with a view to securing a safe income for himself and family, it is not liable, provided, of course, it has invested in such securities as are authorized by law. There is, of course, no question that a trust company may invest funds in mortgage bonds secured by lands. In fact, this character of securities seemed to be preferred by the courts. With those prin-

ciples in mind, we find no error in the court's instruction to the jury, which said: "If you believe from the evidence that the bank and trust company, in investing the funds in the Watkins bonds, failed to exercise the degree of care and prudence required of it by instruction No. 3, and that as a direct result of such failure, if any, it has failed to collect the interest on the investment since July 22, 1923, the law is for the plaintiff; unless you so believe and find, the law is for the defendant."

The evidence for the appellant, Mrs. Bishop, was directed to proving that the bank and trust company and its agents at the time of the making of the loan to Watkins knew that the lands which were covered by the mortgage securing the bonds was not of sufficient value to make a loan of $40,000.00 reasonably secure, and that the bank and trust company was induced to make the loan because Watkins was indebted to it on other accounts, and in making him additional loan it attempted to secure itself against existing loans. On the other hand, appellee, bank and trust company, introduced evidence to prove that the Watkins land covered by the mortgage was at the time of the making of the loan regarded by prudent business people in that vicinity as well worth a sum fully sufficient to secure a loan of $40,000.00, with interest, and to establish this fact introduced a number of witnesses who testified concerning the value of the Watkins land at that time and also concerning the sale value of other lands in the same vicinity which, by comparison, was intended to show that the Watkins lands were of the value claimed by the bank. This latter evidence is complained of as incompetent, but we are unable to find any sound basis for this. Land values in any community are necessarily relative. The sale price of one tract in a whole community might not fix the sale value of the lands of that community, but the sale value generally of land in that community would tend strongly to show, it would seem, that a specific tract of land was fairly valued and appraised if fixed at a price level not different from tracts around it. The evidence is not all one way upon the question of care and diligence, but rather badly mixed up, and when properly submitted to a jury gave the historic "twelve good men and true" a fine opportunity to exercise their prerogative of determining which is true and which is false, and to return a verdict according to the right of the matter.

We find no merit in the other contentions made by appellant: (a) Failure to sustain motion for judgment notwithstanding the verdict; (b) refusal of court to permit appellant to show the party to whom appellee had loaned the funds was largely indebted to it; (c) the refusal of court to allow counsel for appellant to comment upon voluntary evidence given by president of the bank; (d) the admission of incompetent evidence, which was later withdrawn and the jury admonished not to consider for it was of no importance that Watkins was indebted to the bank except that it tended to show the bank's knowledge of his financial condition, and only this much went to the jury, and it was not important that the president of the bank made a voluntary statement that the bank, as receiver, would pay over to Mrs. Bishop any interest collected. Likewise was it immaterial to appellant that counsel for the bank was permitted to testify concerning the making of the trust agreement and the drafting of the contract, for he did not violate any confidential relation which existed between the attorney and the appellant. As both parties to the agreement were present, participating, any fact known to any person present could be given in evidence if it shed light upon the issues involved. However, this evidence, after being submitted to the jury, was withdrawn by the court and the jury admonished not to consider it. It was of slight importance either way. Other minor complaints of the evidence are without merit.

As no substantial reason is shown why the judgment should be reversed, it is affirmed.

Judgment affirmed.