## IN RE TRUST CREATED UNDER WILL OF JOSEPHINE H. BOWDEN.
## RICHARD W. BOWDEN AND OTHERS v. CITIZENS LOAN & TRUST COMPANY OF MANKATO.[1]

March 22, 1935.

No. 30,325.

[1]Reported in 259 N. W. 815.

*Leo J. Maher,* for appellants.

*Wilson & Wilson* and *W. A. Doerr,* for·respondent.

JULIUS J. OLSON, JUSTICE.

This is an appeal by the beneficiaries of the trust created under the will of Josephine H. Bowden, deceased, from an order of the district court of Blue Earth county refusing to make certain requested amended findings and denying their motion for a new trial. We shall refer hereafter to appellants as the beneficiaries and to the respondent as the trust company.

Testatrix died a resident of Mankato April 29, 1927. Her will was duly admitted to probate in and by the probate court of Blue Earth county, and the proceedings in that behalf were duly completed. Thereafter the district court of that county appointed the trust company the trustee of her estate, and it duly qualified. Under the terms of the trust as set forth in the will the trustee was "to hold and manage the property subject to said trust as a Trust Fund invested, and from time to time, if need be, re-invested by said trustee in such good and productive bonds or mortgages (but not real estate or common stock) as will produce a sure and regular income." The trustee was given "full power to sell, lease, mortgage, exchange or otherwise dispose of all property in said trust, as it may deem proper, and to execute valid instruments to carry out the purposes of this trust." The present controversy arises by virtue of the following facts: The trust company, a Minnesota corporation organized and existing as such, on November 18, 1919, made a loan to one Vail in the sum of $12,000, the loan being secured by a first mortgage upon a well improved farm in Blue Earth county appraised at twice that amount. The rate of interest was six per cent per annum, payable semi-annually. That loan matured November 18, 1924. Pursuant to the general custom of the trust company, it executed and delivered to various parties participating trust certificates under the terms of which it agreed that it would "hold all papers, including said note and mortgage, as

Trustee for the holders of this and other certificates of this series, so issued against the security therefor, and out of the interest and principal collected thereon, forthwith upon the making of such collection, to pay to the legal holder of this certificate his or her just proportion of the principal and interest so collected. Interest to maturity at the rate of 5½ per cent per annum is evidenced by interest certificates hereto attached.

"That in case default be made in the payment of the principal of, or any interest on, any note secured by said mortgage, or in the performance of any other covenant or agreement in said mortgage contained, to be performed by the mortgagor, then the Trustee may, and upon the written request of the holders of 50% in amount of all Fractional mortgage certificates secured by said note and mortgage shall foreclose said mortgage in its own name, or as Trustee for the Fractional mortgage certificate holders, upon tender to it of reasonable indemnity against the expenses of such foreclosures." The remaining one-half of one per cent was retained by the trust company as its service charge for looking after the investment. The entire interest represented by the note and mortgage, except the trust company's portion of the interest to be collected, was thereby assigned to various certificate holders, one of these being Ruth R. Young, to whom a certificate in the sum of $3,000 was issued. The mortgage was renewed on its maturity date, the new mortgage falling due five years thereafter, November 18, 1929. Similar certificates were issued to the various interested trust certificate holders. This included also the Young certificate. On January 30, 1928, the trust company purchased from Miss Young the $3,000 certificate held by her, she desiring to cash the same. The purchase was made by the trust company out of funds belonging to the Bowden trust. The certificate held by Miss Young was canceled, a new certificate being issued to the trust company as trustee of the Josephine H. Bowden trust. Prior to the maturity of the renewed $12,000 mortgage the mortgagor had paid off $1,500 upon the principal sum, and all interest payments had been promptly met. The partial payments had been used in payment of other certificates that matured earlier than that issued to Miss Young.

When the new mortgage matured in 1929, the trust company, instead of taking a new mortgage, entered into an extension agreement with the mortgagor extending the loan to November 18, 1934. New trust certificates were issued to the former certificate holders, and one of these was taken by the trust company as trustee of this particular trust. The court found, upon adequate evidence, that the trust company acted in good faith in making this investment for the trust and that the investment was a proper one and "a legal investment under the laws of the state of Minnesota regarding the investment of trust funds."

The trust company on May 21, 1934, filed its final account as trustee and asked to be relieved of its responsibilities as such. Prior to so doing it had furnished and provided annual accounts. Upon the hearing of that petition, due notice having been given, the beneficiaries appeared and objected to this particular investment (among others not here involved) and sought to surcharge the trust company therewith, including interest thereon, taking the view below, likewise insisting here, that the investment was not one authorized under the law as an investment for trust estates. The particular point made is that the statute does not permit the taking of a fractional interest in a mortgage under the circumstances here disclosed. It was also asserted below that the trust company had purchased this instrument from itself. The court found otherwise, and the evidence amply sustains that finding. Thus there is presented for review here the only error assigned below, namely "that the decision is not justified by the evidence and is contrary to law."

The beneficiaries urge that the fractional mortgage certificate should be removed and that the account of the trustee be "surcharged with the amount invested in said certificate, together with interest from the time of the investment. The reasons for this claim are that said fractional mortgage certificate above referred to is not of the kind and character defined by the statutes of Minnesota as an 'authorized security' for the investment of trust funds by a corporate trustee." They cite 2 Mason Minn. St. 1927, §§ 7714, 7735, 7738. Under § 7714(4) it is provided that an in-

vestment shall be deemed authorized security when the same is placed "on notes or bonds secured by mortgages or trust deed on unencumbered real estate in Minnesota, * * * worth when improved at least twice * * * the amount loaned thereon." Section 7714, defining authorized securities, was amended by L. 1931, c. 296, again by L. 1933, cc. 256, 307, 368, and again by Ex. Sess. L. 1933-1934, c. 50, 3 Mason Minn. St. 1934 Supp. § 7714. It is obvious from a reading of that section and subsequent amendments that the base for investments of this nature is constantly being increased.

In respect of the duty of a trustee or other fiduciary in the investment of trust funds, § 7738 provides that "any amount not less than one hundred dollars received by it as executor, administrator, guardian, or other trustee, or by order of court, not required for the purposes of such trust, or not to be accounted for within one year, it shall invest as soon as practicable in authorized securities either then held by it or specially procured by it; and the income, less its proper charges, shall become part of the trust estate, and the net accumulations thereon shall be likewise invested, accounted for, and allowed in the settlement of such trust." It will be noted that under § 7714(4) a trustee may invest in "notes or bonds secured by mortgages or trust deed." If in the instant case the trust company had taken a new mortgage in 1929 and had invested the full amount of the mortgage as trustee of this particular trust, there can be no doubt that this would be a valid and legal investment; and if, instead of taking a new note, several notes had been taken, all secured by the same mortgage, it would seem that this too would be a legal investment. If such new notes were taken, all secured by the same mortgage, it would seem that one or more of such notes could be taken as "authorized security" within the statute.

Counsel for the beneficiaries ably presents the argument that this investment is one wherein there is not unity of ownership and that as such absolute control (claimed to be an essential part of the security) is lost. In support thereof are Webb v. Jonas, L. R. 39 Ch. Div. 660, 668; In re Mendel's Will, 164 Wis. 136, 159 N. W.

806; In re Hodges' Estate, 66 Vt. 70, 28 A. 663, 44 A. S. R. 820. This particular objection would apply with equal force were the investment made in a bond issue, such as a railroad bond. Yet under our statute relating to authorized investments, 2 Mason Minn. St. 1927, § 7714(6), such investments are authorized. The same would hold true if in the instant case several notes had been taken, all secured by the same mortgage, or if bonds secured by trust deed had been issued and sold. The fear expressed by the court in the case of St. Paul Trust Co. v. Strong, 85 Minn. 1, 88 N. W. 256, applies with equal potency to any trustee's acts. There must of necessity be some reasonable reliance placed upon the integrity and good faith of the trustee. It would be difficult indeed to restrain by legal enactment a trustee who deliberately plans to ruin his beneficiary's estate. Dissipation of funds might as easily be made by investing in small mortgages as in participating mortgages. Good faith and honest dealing are essential elements entering into a trustee's every act for his beneficiaries. These essentials the courts jealously guard. Nor is counsel's argument that the trust company has an interest in this mortgage tenable. The trial court found otherwise. Its interest was contingent and depended upon its service in accomplishing the collection of the interest. The judgment to be entered in the lower court upon the findings as they now stand will amply protect the beneficiaries from any interest or ownership on the part of the trust company.

After all, it is the duty of the court to look to the substance of the transaction rather than to its mere form. We should not permit the reality to be obscured by a mere name or label. When testatrix executed the will and granted to the trustee the broad powers there conferred it seems reasonable to suppose that she placed her confidence in the trustee and in the judgment of its officers. A bond issue after all may involve many thousand investors. It is not difficult to perceive that a similar situation would exist in case of a trust deed securing a large sum of money upon some expensive building in one of our cities. It is a matter of common knowledge that trustees are constantly investing in such securities. It affords a convenient method of placing trust and

other funds on the part of investors. There is usually a market for such securities. This is of advantage to the holder.

Of course the laws governing trusts should be rigidly enforced, and all statutory provisions should be strictly complied with. That has been held time and again by this and other courts. It is not necessary to go into an extended citation of authorities. A few will suffice. St. Paul Trust Co. v. Strong, 85 Minn. 1, 88 N. W. 256; Larson v. Security B. & T. Co. 178 Minn. 209, 224 N. W. 235, 226 N. W. 697; Kelly v. First Minneapolis Trust Co. 178 Minn. 215, 226 N. W. 696. We had occasion recently in In re Estate of Janke, 193 Minn. 201, 258 N. W. 311, to consider the liability of a fiduciary, in that case an executor. We cannot, nor should we, limit the rule laid down in these cases. But it must also be remembered that the liability of a fiduciary is not that of an insurer or guarantor. The trust company owed to the beneficiaries good faith coupled with honest and intelligent judgment. It did not guarantee that it was free from the human limitations going with the exercise of ordinary prudence, judgment, and discretion. In King v. Talbot, 40 N. Y. 76, 85, the court said:

"The trustee is bound to employ such diligence and prudence in the care and management [of the trust estate], as in general, prudent men of discretion and intelligence in such matters, employ in their own like affairs." (Quoted with approval in In re Balfe's Will, 152 Misc. 739, 274 N. Y. S. 284, 291.)

11 R. C. L. 143, § 150, states the general rule thus:

"In order to obtain a secure investment yielding a reasonable income, an executor or administrator is generally permitted to supplement, if necessary, the funds of the estate with other funds, placing the combined funds in the same investment."

In In re Union Trust Co. 219 N. Y. 514, 519, 114 N. E. 1057, 1058, the court said:

"The advantages that are frequently to be secured by combining trust funds to make a large and more satisfactory investment than can be made of the funds of one trust without combination are of

sufficient importance and value to the several trust funds to over-come any disadvantage that may arise from the fact that the several owners of the investment may thereafter differ in the matter of handling the same. Trust funds have been from time to time combined for investment with satisfactory results, and the practice is generally recognized as proper for a trustee."

See also In re Jacobs' Will, 152 Misc. 139, 273 N. Y. S. 279, and cases cited p. 280; In re Alexander's Estate, 152 Misc. 354, 273 N. Y. S. 984; In re Hamersley's Estate, 152 Misc. 903, 274 N. Y. S. 303; In re Nix, 276 N. Y. S. 823; Barry v. Lambert, 98 N. Y. 300, 50 Am. R. 677; Real Estate Trust Co. v. White, New York L. J. October 23, 1901; Vansant v. Spillman, 193 Ky. 788, 237 S. W. 379; Bishop v. Peoples B. & T. Co. 218 Ky. 508, 291 S. W. 718, 51 A. L. R. 1258. Many states have by statute included such certificates as authorized investment of trust funds. Amongst these may be mentioned California, Colorado, New Jersey, New York, and Ohio, and perhaps others.

The beneficiaries have received the advantages of the interest earned and collected from this investment over a period of years. It has become a part of the assets to them now going. There is no evidence that any loss will occur. The trial court with painstaking care covered the entire field in its findings. Good faith coupled with intelligent judgment were found as matters of fact. Under these circumstances we believe that justice requires that the action of the trial court should be sustained.

Affirmed.