## The Chapter House Circle of the King's Daughters *vs.* Hartford National Bank and Trust Company.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, JS.

Argued April 14th—decided July 10th, 1936.

*Charles Welles Gross,* with whom was *Wallace W. Brown,* for the appellant (defendant).

*Arthur E. Howard, Jr.,* for the appellee (plaintiff).

The following filed briefs as amici curiae: *Edward J. Daly,* Attorney General, and *Charles J. McLaughlin,* Deputy Attorney General; *Lucius F. Robinson, Francis W. Cole, Edward M. Day, Lawrence A. Howard, Frederick H. Wiggin, J. Dwight Dana, Harrison Hewitt* and *William B. Gumbart; William J. Galvin, Jr., A. S. Albrecht* and *Milton H. Richman.*

MALTBIE, C. J.   On June 30th, 1924, the plaintiff delivered to the United States Security Trust Company, to which the defendant has succeeded, a certain note and mortgage and certain cash to be held by the trust company as financial agent for the plaintiff, with authority to make investments at the discretion of its officers unless and until otherwise instructed by the plaintiff's representatives.   The cash received by the trust company was invested and reinvested from time to time in notes secured by real-estate mortgages, in accordance with a preference expressed by the repre-

sentatives of the plaintiff. Sometimes the investment was in an entire mortgage and at others in an undivided interest in a mortgage. In either case the note and mortgage were taken in the name of the trust company individually, but in all cases it executed a declaration of trust, stating that the mortgage or a portion of it was held as financial agent for the plaintiff. The trust company from time to time made exchanges of investments between the fund it held for the plaintiff and other funds held by it in a fiduciary capacity, cancelling the declaration of trust representing the investment taken from the fund held for the plaintiff and substituting a declaration representing the new investment. On October 31st, 1928, such an exchange was made, the new investment being an entire note for $6500 secured by a mortgage on real property in Hartford. The note and mortgage, which were dated March 19th, 1923, were in the individual name of the Security Trust Company. The defendant on making this change entered on the books of its trust department and placed in the file representing the plaintiff's fund, a declaration of trust to the effect that it held the note and mortgage as agent for the plaintiff, describing them by their date, the location of the property, the names of the makers and the volume and page of record in the land records.

On October 31st, 1928, when the mortgage was placed in the plaintiff's account, it fulfilled the requirements for a proper investment of the trust funds, and any loss resulting from default in it was due to general conditions and would have resulted had the note and mortgage been taken by the defendant in its fiduciary capacity. Thereafter the defendant or its predecessor received interest on the mortgage and transmitted it to the plaintiff until March 19th, 1932, but since that date the defendant has received no net operating

income from the note or property after paying charges and consequently the plaintiff has received no return from the investment. The plaintiff received quarterly statements of the account, copied from the ledger sheets of the trust company, which set forth all the transactions with respect to the account as regards principal as well as income, but none of these statements showed that the mortgage was held in the name of the trust company individually, although they did show that mortgages from time to time had been taken out of the account, for which, as the plaintiff must have known, no releases were executed by it, and that others had been substituted. A representative of the plaintiff's finance committee, which had made the original deposit with the trust company, in many instances when accounts were received, discussed them with representatives of the trust company and made extensive inquiries, which were fully answered, and there was no concealment of facts on the part of the defendant; but so far as the officials of the bank are aware, the representative never was informed before October, 1932, that the mortgage and note were held by the defendant in its own name individually, and never saw the mortgage and note.

As soon as the plaintiff received information that the mortgage was held in the name of the defendant individually, it disavowed the investment for that reason and made demand upon the defendant for the payment of the amount invested in the mortgage, with interest. On or about November 17th, 1932, the mortgage note being in default, the defendant started foreclosure proceedings in its own name individually, and on December 23d, 1932, took title to the premises. On that day it executed a declaration of trust reciting that it had held the mortgage as agent for the plaintiff and that it had become necessary to foreclose it, and de-

claring that the trust company held the real estate not for itself but as agent of the plaintiff. Thereafter the defendant offered to execute and deliver to the plaintiff a deed to the premises but the plaintiff declined to accept it.

The loan represented by the mortgage was originally made from funds held by the trust company in one or more trust estates and at no time has the bank had any individual financial interest in it, but it has always held it exclusively in a fiduciary capacity. In making the transfer to the account of the plaintiff, the defendant acted solely in a fiduciary capacity for both buyer and seller and no commission, fee or other profit was collected or charged by the defendant, and the transfer was made at par with accrued interest. The method of making the transfer was in accordance with a practice, extending back at least thirty-five years, of the defendant and other corporate trustees to take notes and the mortgages securing them in the name of the corporation individually and issue declarations of trust in separate certificates identifying the loans or an undivided part of them as the property of a particular trust. All investments of the defendant held in a fiduciary capacity are in a distinct department under the care and management of separate officials from those in its banking department, are kept in separate vaults and safes apart from those of the bank, and are never mingled with the property of the bank. Each investment in a mortgage loan is evidenced by a separate declaration of trust executed by the defendant in its fiduciary capacity, and is recorded on the books of account of the trust department as the property of the particular trust in question, these books being entirely separate and distinct from the books of the banking department.

The case has been argued before us upon the basis

that the defendant was holding the fund as a trust. The claim of the plaintiff is that the defendant by investing the fund in a note and mortgage in which it was named payee and grantee in its individual capacity, instead of in its capacity as financial agent for the plaintiff, committed a breach of trust such that the plaintiff might disavow the transaction, and, having done so, recover of the defendant the amount invested in that note and mortgage, with interest. We do not approach the issues in an effort to search out mere technical breaches of trust; that there may be some practical advantages growing out of the investment of trust funds by a corporate trustee in its individual name may be conceded; and a practice which is found by the trial court to have been followed by trust companies of the highest standing, as undoubtedly is the defendant and others whose counsel have appeared before us as *amici curiae*, for at least thirty-five years, is certainly not lightly to be held illegal. Unless there is some substantial breach of legal requirements, as they are to be interpreted in the light of present day conditions, or some real substantial danger of loss or threat to security of funds held by trust companies, by reason of such investments, we should not hold them to be contrary to law.

On the other hand, we cannot forget that if the defendant and these other banks and trust companies, well managed and thoroughly conscious of their duties as fiduciaries, may invest in mortgage loans taken in their individual names, so may other banks and trust companies not so well managed or so zealous for the welfare of those entitled to the benefit of the trusts thus held. Also it is to be remembered that the controlling principle must be held applicable to state as well as national banks and trust companies. The practice which the defendant bank seeks to have us sanc-

tion has no basis in any decision of this court or any statute of this State, but it has been adopted by the banks and trust companies upon their own responsibility, unchecked by the bank commissioners of the State or the national bank examiners. If there should be substance to the fear expressed by the attorney general as to the effect of holding that practice to be illegal, that is no sufficient reason for our giving our sanction to it, if it be contrary to law.

It is ancient but still sound law, as applied, at least, to an individual trustee, that in investing the trust fund or any part thereof in a note or mortgage he should not take the security in his own name, but the papers should bear upon their face sufficient indication that they are held by him as trustee. *Mitchell* v. *Moore,* 95 U. S. 587, 590; 3 Bogert, Trusts & Trustees, § 596. As Bogert points out, this rule is but an application of the principle that a trustee "should attach the trust label to the property [held by him in a fiduciary capacity] in whatever way is practical, considering the nature of the res"; and the reasons he gives for that principle are, in brief, as follows: To guard against the temptation of the trustee to take the security for himself and to substitute something of his own of less value in its place; to afford the beneficiary the best means of tracing the property, should it be necessary to do so; and to protect the beneficiary against loss of the property or difficulty in asserting his rights to it should it be taken by creditors of the trustee or pass into the hands of a purchaser. With the rule as applied to notes and mortgages taken by an individual trustee, we do not understand the defendant to quarrel, but, in brief, its position is that as applied to banks and trust companies, supervised and managed as they are, the dangers against which it is designed to guard are so obviated that there is no need for its appli-

cation, and that, on the other hand, there are benefits to the beneficiaries of the trusts from the practice of trust companies of taking such securities in their individual names.

Banks and trust companies, whether national or state, are under the supervision of government officials and subject to periodic examination by their representatives. In the case of state banks and trust companies, the bank commissioner or his representative is required by statute to examine each institution "to ascertain whether its business has been managed according to law"; provision is made for the appraisal of real estate held by the bank or upon which loans by it have been made, where interest is in arrears more than one year; and the commissioner may prescribe such forms of accounting "as may seem to the best interest of" the institution—the statute does not mention in this connection the interest of the public or those doing business with the bank—"when the methods of [the institution] fail to clearly and accurately show the liabilities, the earnings and a proper classification of assets." General Statutes, Cum. Sup. 1935, § 1436c. An act originally passed in 1931 requires that all investments held by a state bank and trust company in a fiduciary capacity shall be segregated and not mingled with its other assets and "shall be so held as clearly to set forth the fiduciary capacity in which such state bank and trust company in acting." General Statutes, Cum. Sup. 1935, § 1459c. The federal statutes require national banks exercising trust powers to segregate all assets held in a fiduciary capacity from their general assets and to keep books and records showing in proper detail all trust transactions; U. S. C. A., Title 12, § 248(k), p. 319; and the regulations of the federal reserve board require that the investments of funds be kept separate from the securities owned by the bank

and that the investments of each be kept separate from those of all other trusts except where the cash balance in a fund is too small to be invested separately to advantage. Regulations of Federal Reserve Board, F, Series of 1930; id., Revision of 1936.

We may properly assume that the examination of banks by government officials, state and federal, is sufficient to insure that at the time the examinations are made, the bank has in its trust department, segregated from the assets it holds in any other capacity, sufficient money and securities to represent the trust funds intrusted to it; but we are not apprised how far the examiners go to determine whether securities belonging to any trust are kept separate and distinct from those of other trusts and whether the other requirements of the law as to the method of dealing with the several trusts in its possession are complied with. Except as we may assume compliance with the requirements in our statute, § 3868, that examinations be made at least annually, we are not informed how frequent they are. That the supervision and examination by government officials is sufficient to prevent manipulation of trust funds, particularly between the trust department and the other departments of a bank, in a time of financial emergency such as that through which the country passed a few years ago, is open to serious question, as is the sufficiency of the control and examination to prevent a dishonest official, between examinations, from illegally disposing of trust funds held in the name of the bank. Hence such examinations do not adequately serve the last two of the objects we have stated as the reasons for a requirement that securities held in a fiduciary capacity bear evidence upon their face of that fact, that is, to assist the beneficiary in tracing the funds and to protect his rights should the property be taken by creditors or pass into the hands of a pur-

chaser. However adequate may be the practice of the defendant in its own methods of accounting and in the earmarking of investments of particular funds to guard the beneficiaries, the only assurance that other trust companies afford the same protection is the extent to which they are subjected to official supervision and control. We are not greatly impressed with the sufficiency of the control and examination of trust companies by government officials to give to the beneficiaries of the trusts the protection to which they are entitled.

As far as the benefits to beneficiaries from the practice of corporate fiduciaries holding notes and mortgages in their own names are concerned, the briefs of the corporations represented before us point out only these: A saving in expense due to the avoidance of making assignments and transfers of record where investments are interchanged between particular funds; the ease with which securities may be shifted from one trust fund to another; the fact that there is no necessity of making known to those having occasion to deal with the security, the terms of the trust under which it is held; and the fact that the general public may deal with securities as owned by the trust company without the necessity of inquiring into the terms of any particular trust. The supposed advantage from saving of expense as far as we can determine is inconsequential as set over against adequate protection for the beneficiaries of the trust. Nor is it of great significance that the terms of the trust may be more easily kept from general knowledge if the securities comprising it are held in the name of the individual bank; and it is a commentary upon this claim that it was admitted on the argument before us that it is the practice of trust companies in taking shares of corporate stock forming a portion of a trust fund to have the certifi-

cates state that the bank is holding them for the particular trust of which they form a part. To say that a mortgage security should disclose upon its face the fact that it is held as a portion of a particular trust is not to hold that the instrument creating the trust must necessarily be recorded in extenso; in any ordinary situation all that would be necessary would be a reference to the trust by an appropriate recital in the deed sufficient to give to any person desiring to deal with it the means of ascertaining the powers of the trustee. See 3 Devlin, Real Estate (3d Ed.) pp. 2891 ff; Nichols, Annotated Forms, p. 2194; Thompson, Real Property, Forms, pp. 445 ff.

The facility of change of securities by mere bookkeeping entries and by destroying one declaration of trust and inserting another, with all its suggestion of the possibility of preference of one trust over another as regards the value of or income from securities, and of the ease with which securities may be shifted between the trust, commercial or savings departments of a bank or trust company, should other than the most disinterested motives influence its representatives, presents a picture probably novel to most persons having occasion to deal with those companies and hardly conducive to inspire greater confidence in them. One of the most substantial reasons why a trust company should not be permitted to take notes and mortgages in its individual name grows out of the very claim of benefit to the beneficiary through the fact that so long as the note and mortgage stand in the individual name of the trustee, persons having occasion to deal with them, not being apprised of the fact that they are held in trust, do not seek out the terms of the trust. To have a mortgage standing upon the land records as running to an individual bank or trust company when in fact it is held in trust, tends to mislead the public and to sub-

ject the beneficiary to danger of embarrassment or loss. Where a bank or trust company holds a mortgage, subject to a trust limiting its right to dispose of or deal with the mortgage or property, the public are entitled to notice of that fact. If anyone taking an assignment of the note and mortgage or purchasing the property without knowledge of the trust might hold it under such circumstances against the beneficiary, few persons would desire to thus become parties, even unconsciously, to a breach of trust on the part of the trustee. If, on the other hand, an assignee, purchaser or attaching creditor who has relied upon the land records must take a mortgage of property subject to the rights of the beneficiary of the trust, those records fail in their purpose of affording a means of determining the title upon which a purchaser or creditor may depend. From the standpoint of the beneficiary where a note and mortgage have been assigned or property has been conveyed in violation of the trust, if the rights of an assignee, purchaser or attaching creditor without knowledge of the trust have preference, the beneficiary has lost a portion of the res; if the rights of the assignee, purchaser or attaching creditor do not have priority, the beneficiary will nevertheless very likely be subjected to difficulty and embarrassment in enforcing his own just claims.

The question whether or not a bank or trust company may invest trust funds held by it in so-called participation mortgages is not directly involved in the situation before us. We cannot, however, close our eyes to the fact that to hold that a trust company must take a note and mortgage in which it invests the funds of an estate, not in its individual name but as trustee for the trust, would probably restrict such a practice to a considerable extent, and the scope of the argument before us has recognized that fact. While the methods

of investment generally referred to as participation mortgages vary, that described in the finding consists of the taking by the defendant of a note and mortgage in its own name, followed by declarations of trust stating that it holds certain portions of the investment for certain trusts, this declaration being placed in the file devoted to that trust, and appropriate book entries being made. It is a quite general and always possible incident of this practice that frequent changes of investments are made between the several trusts by the cancellation of declarations and the execution of others. This practice is undoubtedly advantageous in many instances to the beneficiaries of the trusts; it makes it possible to combine into one fund for investment relatively small amounts which could not readily be invested by themselves in real-estate mortgages, thus enabling the beneficiary to get a larger income, and it also permits the funds of the trust to be invested in various securities by participation in different mortgages, instead of confining them to a single mortgage, thus diminishing the risk of substantial loss. In weighing these benefits it should not be forgotten, however, that the investment of trust funds is not limited to real-estate mortgages, but many other types of investments are permitted, so that even relatively small sums may be made productive of income and a diversification of investments may be secured. General Statutes, §§ 4836, 3995, Cum. Sup. 1935, § 1485c.

On the other hand, aside from the dangers which are inherent in the taking of mortgages representing an investment of trust funds in the individual name of the trustee, there are other substantial reasons why such a practice should not generally be approved. 3 Bogert, Trusts & Trustees, p. 2026 ff. These are some of the reasons. One of the quite usual incidents of this practice is for the bank or trust company to make the loan

from its corporate funds and then absorb it as opportunity offers by issuing declarations of trust in behalf of various trust funds held by it; this involves its taking in its corporate capacity amounts from the trust funds corresponding to the interest of the particular trust in the mortgage; 45 Yale Law Journal, p. 860; and thus, in effect, the corporation sells the securities to itself as trustee, a practice which for obvious reasons has generally been regarded as improper. *Banks* v. *Judah*, 8 Conn. 145, 157; *Michoud* v. *Girod*, 45 U. S. (4 How.) 503, 555; *St. Paul Trust Co.* v. *Strong*, 85 Minn. 1, 5, 88 N. W. 256; 3 Bogert, Op. Cit., p. 1724. Where the trust company uses only money held by it as trustee to make the loan, it is not free to deal with the security with sole view to the interest of any particular trust and its beneficiaries. Should a particular trust terminate, the beneficiaries cannot require, if the investment is legal, that the trustee pay the face value of the certificates to them but they can be compelled to take an interest in a mortgage represented by the amount stated in the declaration of trust; and, on the one hand, they thus become, not the owners of the mortgage but only one of several, perhaps many, owners, with all that involves of difficulty in dealing with the mortgage security; and on the other hand, because of their outstanding interest, the trustee may itself be hampered in dealing with the securities, with a sole view to the interests of the beneficiaries of a particular trust.

These and other objections to the practice have led to legislation in several states which permits trust companies, under restrictions, to invest funds in this way; and it is notable that commentators upon the practice dwell upon the need of specific limitations upon this method of investment, which, if it is to be validated, only the legislature can impose. 3 Bogert, Op. Cit.,

pp. 2026, 2029; 24 Yale Law Journal, 286, 41 id. 455, 45 id. 857. The regulations of the federal reserve board requiring that the funds of each trust held by a national bank be kept separate from those of other trusts have since 1930 contained an exception where the cash balance in any fund is "too small to be invested separately to advantage" provided the bank owns no participation in the securities and has no interest in them except in a financing capacity, and such investments are permitted by the law of the State in which the bank is located; Regulation F, Series of 1930; id., Revision of 1936; and this illustrates the limited extent to which that board is willing to approve the practice. Such a method of investment was, however, sanctioned in *Springfield Safe Deposit & Trust Co.* v. *First Unitarian Society* (Mass.) 200 N. E. 541. It was also approved in *Matter of Union Trust Co.*, 219 N. Y. 514, 114 N. E. 1057; but it is significant, that the broad ruling of the court was followed by legislation defining the conditions under which investments of this type might be made; *In re Flint's Will*, 269 N. Y. Sup. 470, 475; and the difficulty in preparing legislation which will, on the one hand, authorize such investments and, on the other, afford sufficient protection to the beneficiaries is apparent in controversies which have followed. 7 New York University Law Quarterly, 950; New York Law Journal, January 29th, 1934.

In *Bowden* v. *Citizens Loan & Trust Co. of Mankato*, 194 Minn. 115, 259 N. W. 815, an investment of trust funds in a certificate of trust representing an interest in a mortgage taken by the trust company in its own name was approved, a decision which under our statutes concerning investment of trust funds we would not at present feel free to follow. The American Law Institute Restatement, Trusts, Vol. 1, p. 650, seems to approve the participating mortgage invest-

ment, provided it does not involve a purchase by the trustee from itself individually, making no distinction between corporate and individual trustees. Not much attention seems, however, to have been paid to the effect upon this practice of the rule that a trustee should not hold trust securities in its individual name; this feature of the situation was not considered in the Massachusetts case cited; the New York Court of Appeals condemns that method of investment in the very case which approves the participation mortgage type of investment; and it runs counter to another statement of the American Law Institute, that trust property should be earmarked as such, unless, by use of the word "ordinarily" in its statement of the rule, it meant to leave the way open for excepting the participation mortgage. Amer. Law Institute, Op. Cit., p. 458. In the controversy before us we need only say that we find, in any interference with the participation mortgage type of investment of trust funds, no such disadvantage to the beneficiaries of trusts as would influence us to approve a practice by trust companies of investing trust funds in their individual names, if that practice is otherwise contrary to sound legal conceptions. If the participation mortgage type of investment is to be generally validated it should be by carefully considered legislation. In that way persons placing funds in the hands of corporate trustees will know what they may anticipate in the way of such investments.

In short, despite any advantages which may result from the method of investment which the defendant seeks to have us approve, we find no sufficient reason to abrogate as to banks or trust companies the rule applied to individual trustees, that securities in which trust funds are invested should not be taken in the individual name of the trustee, but should bear upon

their face plain evidence of the fiduciary capacity in which they are held. In the *Matter of Union Trust Co.*, supra, the Court of Appeals of New York stated (p. 520): "It has been . . . universally held that a trustee should not invest trust funds in his own name. Such rule of law should not be abandoned, qualified or in any way impaired. If an individual trustee should continuously and intentionally invest trust funds in his individual name, his conduct in so doing would meet with condemnation by the courts. There is no difference between a corporate trustee and an individual trustee in its or his duty in respect to investments. Trust funds should not only be kept independent of individual and other trust funds, but the investment thereof should, so far as possible, be clearly defined, and at all times stamped with the individual trust to which they severally belong." Of the manner of investment of funds then before the court it also said (p. 521): "Such manner of investing a trust fund violates the long-established rule that a trustee should invest trust funds in the name of the trustee as such, and also the rule that trust funds should at all times be kept, so far as reasonably possible, in the name of the trust, so that they can be identified, distinguished and followed by all persons interested therein." In *Yost's Estate*, 316 Pa. St. 463, 175 Atl. 383, the court reached a similar conclusion, distinguishing a situation where the entire mortgage represents the investment of a single trust from investments by means of a mortgage pool, authorized by the statutes of Pennsylvania. See also *In re Guthrie's Estate*, 320 Pa. St. 530, 182 Atl. 248. Our conclusion is that the defendant committed a breach of trust when it invested the funds it was holding as agent for the plaintiff in a mortgage loan taken in its own corporate name, without desig-

nating the capacity in which it took and was holding the security.

The trial court was not in error in holding that the defendant was guilty of a breach of trust. It awarded as damages the amount of the trust fund invested in the mortgage with interest from the time when the income from it was last paid to the plaintiff. It is often stated to be the rule that where a trustee deposits or invests trust funds in his own name he is liable for any loss of the funds. This rule has frequently been applied without regard to the nature of the circumstances bringing about the loss, and even though, had the deposits or investments been made in the name of the trustee as such, there would have been no breach of trust. *White* v. *Sherman,* 168 Ill. 589, 605, 48 N. E. 128; *Gilbert* v. *Welsch,* 75 Ind. 557, 561. In some cases it is said that, as is the rule as regards improper investments by a trustee, the beneficiary has the right to affirm the action of the trustee and have the benefit of it or to disaffirm it and recover the amount invested or deposited with incidental damages. *Stanley's Appeal,* 8 Pa. St. 431, 435; *Naltner* v. *Dolan,* 108 Ind. 500, 503, 8 N. E. 289; *Chancellor* v. *Chancellor,* 177 Ala. 44, 47, 58 So. 423. Many of the cases where the rule has been applied involve situations where the trustee has mingled the trust fund with his own property, used it in his business or otherwise dealt with it as his own; *Mitchell* v. *Moore,* 95 U. S. 587, 589; *Robinson* v. *Ward,* 2 C. & P. 59; *Mason* v. *Whitthorne,* 42 Tenn. 242; and of the propriety of the rule in such cases there can be no doubt. It may be, also, that the rule is properly applicable where trust funds are deposited in a bank in the individual name of the trustee, because of the likelihood that where this is done a mingling of funds would result, because of the surrender of the control of the money, and be-

cause of the right which the bank and others dealing with it would have to treat it as the individual property of the trustee. *Second District in Greenfield* v. *First National Bank,* 102 Mass. 174; *McAllister* v. *Commonwealth,* 30 Pa. St. 536; *Williams* v. *Williams,* 55 Wis. 300; *Chancellor* v. *Chancellor,* supra; *De Jarnette* v. *De Jarnette,* 41 Ala. 708; *St. Paul Trust Co.* v. *Strong,* 85 Minn. 1, 10, 88 N. W. 256; *Summers* v. *Reynolds,* 95 N. C. 404, 415; *St. Paul Trust Co.* v. *Kittson,* 62 Minn. 408, 414, 65 N. W. 74.

Where the loss is due to circumstances which would have brought it about, even if the funds had been deposited or invested in the name of the trustee as such, the result is not to give such damages as proximately result from the breach of the trust, but to impose a penalty with a view to discouraging such a practice. *Morris* v. *Wallace,* 3 Pa. St. 319, 322. The imposition of such a penalty should be strictly guarded. *Cornet* v. *Cornet,* 269 Mo. 298, 330, 190 N. W. 233. Where, as in the case before us, the trustee, acting in good faith, in accordance with established banking practice, evidently believing that by taking an investment in its individual name it was not acting improperly, takes a security which is in itself a proper investment for trust funds; where, by a declaration of trust in the file of the particular trust and upon its books, the fact that the security represents an investment of the funds of the trust is evidenced and it has done nothing to mislead the beneficiary; and where the loss is due to general business conditions which would have brought it about even though the investment had been taken in the name of the trustee as such, we find no sufficient reason for the imposition of the penalty.

In *In re Guthrie's Estate,* 320 Pa. St. 530, 182 Atl. 248, in a case quite similar to this, the court reached a like conclusion, despite its holding in *Yost's Estate,*

316 Pa. St. 463, 175 Atl. 383, and the other decisions from that State which we have cited. Such, also, we understand to be the rule of the American Law Institute; in its Restatement, Trusts, Vol. 1, § 179 (d), p. 459, it is said: "If the trustee takes title to the trust property in his individual name in good faith, and no loss results from his doing so, he is not liable for breach of trust. . . . Even if he acted in good faith, if a loss resulted from the fact that he took title in his own name, as for example if his personal creditors were thereby enabled to reach the property free of the trust, he would be liable for the loss." We have no controlling authority in this State and at least in such a situation as the one before us, we adopt the statement of the Law Institute. The plaintiff is entitled to recover only such losses as resulted from the fact that the defendant took the note and mortgage in its individual name, not losses due to general business conditions, which would have occurred even though the mortgage had been taken and held in the name of the defendant as trustee. It follows that the trial court was in error as to the rule of damages it applied.

There is error, the judgment is set aside and the Superior Court directed to enter its judgment for the plaintiff, to recover substantial damages should it prove itself entitled to them in accordance with this opinion, otherwise nominal damages.

In this opinion the other judges concurred.