WILLIAM B. FRENCH & another, trustees, *vs.* LUCIA G. HALL.

Suffolk.   January 13, 1908. — March 2, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Equity Pleading and Practice,* Findings in master's report. *Trust,* Powers of trustee. *Equity Jurisdiction,* To follow proceeds of trust fund.

Upon an appeal in equity, a finding of fact by a master which is an inference from other findings set out in his report, if it is not warranted by the particular facts found by him, will be reversed as plainly wrong.

A trustee for various estates, who has only one bank account for the money belonging to all the trusts, which stands in his own name as trustee without further designation, the amounts belonging to the several trusts being shown only on his books, and who keeps the mortgages belonging to all the trusts arranged alphabetically in a box in his safe and the mortgage notes arranged in chronological order in separate envelopes in a box in a safe deposit vault, in equity if not also at law, may make a sale and transfer of a mortgage and the note secured by it from one of the trust estates to another of them by book entries showing the sale of the mortgage and note by the one estate and their purchase by the other, if the sale is made for full value and the trustee acts in good faith on both sides within the limits of his authority. In such a case the book entries are not mere statements of the transaction but are the acts of the trustee which transfer the title to the mortgage and note.

A trustee of eight estates, the personal property belonging to which amounted to three or four hundred thousand dollars, deposited in a bank in one account in his own name as trustee all the money belonging to the eight trusts, without any account with the bank showing to which trust any money so deposited belonged and relying for this information solely on his books of account. All the mortgages belonging to his trusts were arranged alphabetically in a box in his safe, and the mortgage notes were arranged in chronological order in separate envelopes in a box in a safe deposit vault. He made an investment for one

of the trusts at a price of about $10,000 when he had on hand only about $6,000 belonging to that trust for investment, and on the same day credited this trust with about $4,000 as principal and a certain amount as accrued interest on a certain mortgage which theretofore he had held as belonging to that estate and charged another of the trust estates like sums of principal and interest for the purchase of this mortgage. By these entries he meant that the one trust had sold and the other trust had purchased this mortgage for its face value and accrued interest. Thereafter in four successive years he prepared and sent to the beneficiary for life under the trust which he had treated as the purchaser of the mortgage four accounts in which he charged himself as trustee with the interest on the mortgage which he assumed to have transferred. At the time of the assumed transfer the trustee had not misappropriated any funds from any of the trusts and acted in good faith in assuming to make the transfer. There was no formal assignment of the mortgage or indorsement of the note. Later the trustee wrongfully sold and delivered the mortgage and note to a third person and embezzled the proceeds. A suit in equity was brought by a new trustee of the trust which originally held the mortgage and note against the third person to compel their surrender to the plaintiff. The new trustee of the other trust, for which the former trustee assumed to purchase the mortgage and note which he afterwards embezzled, filed an intervening petition and became a party to the suit, claiming the mortgage and note against both the plaintiff and the defendant. A master found that no money or other consideration passed to the estate represented by the intervening petitioner from the estate represented by the plaintiff, and ruled that the former trustee of both trusts did not sell the mortgage to the estate represented by the intervening petitioner, and that that estate acquired no title to it. The judge who heard the case made a decree in accordance with the master's report. On appeal it was *held*, that the finding of the master was plainly wrong and his ruling erroneous; that what was done by the former trustee of the two estates amounted to a sale and transfer of the mortgage and note from the estate represented by the plaintiff to that represented by the intervening petitioner, and that the intervenor was entitled to the mortgage and note or their proceeds.

BILL IN EQUITY, filed April 13, 1905, by the trustees under the will of Catherine D. Hancock, successors to one Charles F. Berry as trustee under that will, against Lucia G. Hall of Cambridge, alleging that Berry wrongfully indorsed and delivered to the defendant a note of one Beckler for $4,250 and the mortgage securing it, to compel the surrender of the mortgage and note to the plaintiff as trustees. Later an intervening petition was filed by the Boston Safe Deposit and Trust Company, as trustee under the will of Jane C. Tinsler, successor as such trustee of the same Charles F. Berry, alleging that Berry as trustee under that will purchased and paid for the Beckler mortgage and note mentioned in the bill, having thus purchased them from himself as trustee under the will of Catherine D. Hancock, praying to be made a party to the suit to establish its right as

such trustee to the Beckler mortgage and note against both the defendant and the plaintiffs.

The case was referred to Samuel K. Hamilton, Esquire, as master, who filed a report containing the findings which are stated and described in the opinion.

In the Superior Court the case was heard by *Schofield*, J., upon the master's report and the exceptions thereto and an agreed statement of facts. The judge overruled all the exceptions to the master's report. The exceptions of the intervening petitioner overruled by the judge included the following, which are referred to in the opinion:

3. To the finding that no money or other consideration passed from the Tinsler estate to the Hancock estate.

4. To the ruling that Berry did not sell the Beckler mortgage to the Tinsler estate and that the Tinsler estate acquired no title to the same.

5. To the ruling that the Tinsler estate is not entitled to receive the Beckler mortgage or any part thereof or any benefit therefrom.

6. To the ruling that the plaintiffs are entitled to have the mortgage and note of Daniel W. Beckler running to the trustee under the will of Catherine D. Hancock delivered to them.

7. To the ruling that this intervenor is not entitled to the Beckler mortgage or any of the proceeds thereof.

The judge ruled that neither the entries made by Berry in his books in his accounts with the Hancock estate and the Tinsler estate, nor the accounts prepared by him in the Tinsler estate but never filed, were sufficient to transfer any interest equitable or legal in the Beckler mortgage from the Hancock estate to the Tinsler estate, or to create or transfer any right in favor of the Tinsler estate as against the Hancock estate to any money belonging to the Tinsler estate and forming part of the blended fund deposited in the Washington National Bank in the name of Charles F. Berry, trustee.

The judge made an order confirming the master's report and ordering that a decree be prepared and entered in accordance with the master's findings. Such a final decree was entered; and the intervening petitioner appealed.

*W. D. Whitmore, Jr.*, for the intervening petitioner.

*W. B. French & E. L. Curtiss*, for the plaintiffs.

SHELDON, J. The defendant Hall has not appealed from the decree entered against her in the Superior Court; and the only contest now made is upon the intervening petition of the Boston Safe Deposit and Trust Company. The fundamental question upon which the rights of the plaintiff and of the intervenor depend is whether there was an actual sale made of the Beckler note and mortgage by Charles F. Berry as trustee under the will of Mrs. Hancock to himself as trustee under the will of Mrs. Tinsler; and the main issue before us is whether the finding of the master that no money or other consideration passed from the Tinsler estate to the Hancock estate was plainly wrong, and whether his ruling that Berry did not sell the Beckler mortgage to the Tinsler estate, and the Tinsler estate acquired no title to the same and is not entitled to receive it or any part thereof or benefit therefrom, was erroneous.

It is evident to us that the master's finding of fact which has just been stated was an inference from the other findings which he has set out in his report rather than an independent finding upon evidence bearing upon this particular question. At most it cannot be treated as varying his express finding that the statements set forth in the first paragraph of the intervenor's offer of proof are true. He had found then these facts: Berry, the effect of whose acts is here in question, was at this time the trustee of eight estates, including the Hancock and Tinsler estates, and held personal property belonging to them amounting to between three and four hundred thousand dollars, besides a large amount of real estate. All the money belonging to these various trusts he deposited in a bank in one account in his own name as trustee, without any account with the bank showing to which trust any money so deposited belonged, but relying for this solely upon his own books of account. On November 28, 1898, he had on deposit in this account the sum of $30,643.37, of which $5,850.50 belonged to the Hancock estate for investment; the sum of $2,539.68 belonged to the Tinsler estate, of which a little over $2,400 was principal and the residue was income; and the rest of this deposit belonged to his other trust estates. At this time he had not misappropriated any funds

from any one of his trusts. On this day he took in his name as trustee under the will of Mrs. Hancock a mortgage from one Jones for $10,100 ; on the same day he credited this estate with the sums of $4,250 as the principal and $17.70 as accrued interest on the Beckler mortgage, and charged the estate of Mrs. Tinsler with like sums for the " purchase Beckler mortgage." He would have testified that according to his system of book-keeping these entries meant that the Hancock estate had sold and the Tinsler estate had purchased the Beckler mortgage for its face and accrued interest; and without such testimony, that is the actual meaning of these entries. After this, in four accounts which, as trustee under the will of Mrs. Tinsler, he prepared and sent to the life tenant under the will of Mrs. Tinsler, and which covered the four years from 1899 to 1902 inclusive, he charged himself with the annual interest on the Beckler mortgage. The last three of these accounts were assented to by the *cestui que trust,* but none of them was filed in the Probate Court. He never filed in the Probate Court any account as trustee under the will of Mrs. Hancock, and is not found to have rendered any account under the trust to any *cestui que trust.* It has been agreed also by the parties that Berry kept all the mortgages belonging to his trusts alphabetically arranged in a box in his safe, and kept the notes arranged in chronological order in separate envelopes in a box in the safe deposit vault.

Under these circumstances, we do not see how the finding of the master that no money or other consideration passed from the Tinsler estate to the Hancock estate can be maintained. When Berry took the Jones mortgage for the latter estate he had on hand for investment only $5,850.50 belonging to that estate. It was necessary to raise $4,250 less fifty cents to pay for the new investment. He had full power to sell and dispose of this Beckler mortgage ; the only apparent way in which he could transfer money from the Tinsler estate to the Hancock estate, inasmuch as all the money belonging to all of the eight trusts which he held was kept together in one bank account, though earmarked as a trust account, was by entries on his own books; and these entries he made. He was not at this time in default, and there is nothing to overcome the natural presumption that

he acted in good faith. The amount thus paid by the Tinsler estate was larger, to be sure, than the amount of the funds of that estate then available for investment; but this discrepancy was soon after accounted for, according to Berry's books and an agreement of the parties, so that it becomes of no significance. From the manner in which these notes and mortgages were kept together by Berry, without distinction as to the respective estates to which they belonged, it sufficiently appears that no actual delivery of this note and mortgage could have been made. We are of opinion accordingly that this finding of fact made by the master was plainly wrong, and should be reversed.

And we are of opinion that what was thus done by Berry as trustee of each of these estates was tantamount to a sale and transfer of this note and mortgage from the Hancock to the Tinsler estate. The full value of the security was paid by one estate and received by the other, with the intention of the representative of both of them, acting in good faith, within the limits of his authority, that the title should pass from one to the other. This intention was carried out as far, under the circumstances, as it could be carried without making a formal assignment of the mortgage and indorsement of the note. But this was not necessary. *Hewins* v. *Baker*, 161 Mass. 320. *Morris* v. *Bacon*, 123 Mass. 58. *Norton* v. *Piscataqua Ins. Co.* 111 Mass. 532. *Crain* v. *Paine*, 4 Cush. 483.

The defendant contends that the well recognized doctrine that one, even though acting in two different characters, cannot contract with himself, is fatal to the claim of the intervenor. But we do not think so. This transfer is to be regarded in equity as a completed and executed transfer. Nothing now remains to be done but to require a third person, the defendant, into whose hands the security has wrongfully come, to deliver it up to the person rightfully entitled to receive it. For the reasons already stated that person is the intervenor.

We do not regard it as material that Berry, four days after taking the Jones mortgage, sold it for its face value, and apparently reinvested only $5,500 of the amount thus received.

We do not mean to say that the entries upon Berry's books are conclusive as matter of law upon the plaintiff or the intervenor; nor do we think that this case is to be governed by the

doctrine of the cases which have held that where the same person is named as executor and as trustee under the will, he can be relieved from his liability as executor only upon the allowance in the Probate Court of an account filed by him as executor, showing that he has paid over the money to himself as trustee. *Crocker* v. *Dillon*, 133 Mass. 91. *Conkey* v. *Dickinson*, 13 Met. 51. The book entries here in question, under the circumstances of this case, must be regarded as acts done by Berry, and not as mere statements made upon his accounts.

It follows from what has been said that the ruling of the Superior Court was wrong and the decree of that court must be reversed; and that the intervenor's third, fourth, fifth, sixth and seventh exceptions to the master's report must be sustained, and a decree entered in its favor.

*So ordered.*