FRANCIS C. WELCH & others, executors, *vs.* CITY OF BOSTON.

FRANCIS C. WELCH & others, trustees, *vs.* CITY OF BEVERLY.

SAME *vs.* INHABITANTS OF BROOKLINE.

SAME *vs.* INHABITANTS OF MILTON.

Suffolk.  Essex.  Norfolk.  November 22, 23, 1911. — February 29, 1912.

Present: RUGG, C. J., HAMMOND, BRALEY, SHELDON, & DECOURCY, JJ.

*Tax,* Assessment, Abatement.  *Executor and Administrator.  Statute,* Construction.  *Practice, Civil,* Parties.

Where a person who is the executor of a will is also the trustee thereunder, a transfer of personal property held by him as executor to himself as trustee does not become a distribution under St. 1909, c. 490, Part I, § 23, cl. 7, which after notice to the assessors in accordance with the requirements of that clause will render such property no longer assessable to him as executor in the city or town where the testator dwelt, until his account as executor showing the transfer has been allowed by the Probate Court, and on the completion of the distribution by such allowance it does not for the purposes of taxation relate back to the date of the transfer. Reaffirming *Hardy* v. *Yarmouth,* 6 Allen, 277.

One who has filed a list of personal property with the assessors of a town or city is not precluded from maintaining a petition for the abatement of the whole of the tax assessed upon such property.

Upon a petition under St. 1909, c. 490, Part I, § 77, appealing to the Superior Court from the refusal of the assessors of a town or city to abate a tax, the assessors are not proper parties to the proceeding, which is against the town or city.

FOUR PETITIONS, filed in the Superior Court under St. 1909, c. 490, Part I, § 77, the first by the executors of the will of Quincy A. Shaw, late of Boston, and the other three by the same persons as trustees under that will, appealing from the refusals of the assessors of the several respondents to abate taxes on personal property assessed as of April 1, 1910.

The cases came on to be heard before *Jenney,* J., upon the petitions and answers and agreed statements of facts. The judge ruled that the petitioners in the first case were not entitled to any abatement and that in each of the other cases the petitioners were entitled to an abatement. He found for the respondent in the first case and for the petitioners in the other cases, and at the request of the parties reported each of the cases for determination by this court.

*M. Donald,* for the petitioners.

*T. M. Babson,* for the city of Boston.

*G. W. Anderson,* (*A. E. Lunt* with him,) for the city of Beverly.

*W. H. White,* for the town of Brookline.

*F. Rackemann,* for the town of Milton.

RUGG, C. J.    These cases involve the validity of assessments made by the assessors of the several defendant municipalities for the year 1910, upon property of the estate of Quincy A. Shaw, a resident of Boston, who died in June, 1908.   He left a will, duly allowed in July, 1908, under which the petitioners were appointed executors and also trustees.   He gave a devise and legacy to his widow, and the residue to the petitioners in trust for the benefit of his widow and children.   The question is whether the estate is taxable under clause 5 or under clause 7 of St. 1909, c. 490, Part I, § 23.*

Narrowly stated, it is whether the estate has been distributed by the petitioners acting in their capacity as executors to themselves as trustees.   The material facts upon which it is contended

---

* The clauses referred to are as follows: "Fifth, Personal property held in trust by an executor, administrator or trustee, the income of which is payable to another person, shall be assessed to the executor, administrator or trustee in the city or town in which such other person resides, if within the Commonwealth; and if he resides out of the Commonwealth it shall be assessed in the place where the executor, administrator or trustee resides; and if there are two or more executors, administrators or trustees residing in different places, the property shall be assessed to them in equal portions in such places, and the tax thereon shall be paid out of said income.  If the executor, administrator or trustee is not an inhabitant of the Commonwealth, it shall be assessed to the person to whom the income is payable, in the place where he resides, if it is not legally taxed to an executor, administrator or trustee under a testamentary trust in any other State."

" Seventh, Personal property of deceased persons shall be assessed in the city or town in which the deceased last dwelt.  Before the appointment of an executor or administrator it shall be assessed in general terms to the estate of the deceased, and the executor or administrator subsequently appointed shall be liable for the tax so assessed as though assessed to him.  After such appointment it shall be assessed to such executor or administrator for three years or until it has been distributed and notice of such distribution has been given to the assessors stating the name and residence of the several parties interested in the estate who are inhabitants of the Commonwealth and the amount paid to each.  After three years from the date of such appointment it shall be assessed according to the provisions of clause Fifth of this section."

that such a distribution took place are that just before February 1, 1910, the executors met and determined to distribute to themselves as trustees a large part of the estate. Pursuant to this determination, stock certificates and registered bonds were transferred to the petitioners as trustees and certain other transfers of property were made. The physical location of the securities remained as theretofore and in the repositories were other securities belonging to them as executors. A new inventory was opened, in which the securities so transferred were marked as belonging to the trustees and separate accounts were kept except that large overdrafts were made temporarily on the executors' account for the benefit of the trustees. About April 1, 1910, notice in due form was given of the alleged transfers of property by the executors to the assessors of all the defendant municipalities, and lists were filed with them. The trustees contend that thereby they should be assessed under said clause 5 in the several defendant municipalities by reason of residence therein of beneficiaries or of trustees. The city of Boston claims the right to assess the entire estate under said clause 7. No account was filed in the Probate Court showing this distribution by the executors until August, 1910, and it was allowed in November, 1910.

1. The contention is made that reading these two clauses of the statute together the general purpose appears to make property held for beneficiaries taxable in their place of residence, and that under a will like the present establishing a trust fund of many millions of dollars where the debts are comparatively insignificant, such taxes became assessable from and after the death of the testator. Though this argument gains some color from the language of clause 5, it fails to treat the two clauses as correlative parts of a single scheme of taxation, and to give due force to decisive words of clause 7. Clause 7 governs the taxation of estates of deceased persons until the expiration of•three years from the date of the appointment of the executor or administrator or until there has been an earlier distribution of the estate together with notice of the required facts to the assessors. *White* v. *Mott,* 182 Mass. 195. Clause 5 governs taxation after the expiration of three years from such date of appointment and within said three years after such distribution and notice. It also governs in case of trusts between the living, or created otherwise than by will.

This is the only construction which gives natural and adequate meaning to all the language of both clauses of the statute.

2. The inquiry as to what acts one must do in order to transfer property held by him as executor to himself as trustee under the same will has been before this court several times. In *Hall* v. *Cushing*, 9 Pick. 395, at 409, it was said: "before there could be any transmutation of property, . . . the executor must have settled his final account of administration in the court of probate, in which the balance due from him as executor should be allowed to his credit, as being retained by him in his capacity as trustee." The requirement of an allowance of an account showing a transfer from the accountant in one capacity to himself in the other was laid down again in *Conkey* v. *Dickinson*, 13 Met. 51, 53. In *Hardy* v. *Yarmouth*, 6 Allen, 277, the precise point now argued was presented for decision. Executors of a wealthy testator transferred property to themselves as trustees under the same will, and sought to be taxed accordingly. But it was held that "the estate had not been legally transferred by the executors until their account had been duly filed, allowed and proved in the Probate Court. Until that was done, it was only an initiatory step on the part of the executors to make such account; and the *status* of the property, and the liability of the executors to be assessed therefor in Yarmouth, were not changed."

If that case and the two others cited are still authorities, they control the determination of the case at bar. It has been earnestly urged by the counsel of the petitioners and for the municipalities other than Boston, that they ought to be disregarded. It is said that *Hardy* v. *Yarmouth* was decided correctly, but for another reason. It is true that the same result would have been reached upon the ground that no notice of distribution was given to the assessors. But the case was in fact decided as to the taxes for the year 1859 upon the ground that no account had been allowed in the Probate Court, and upon no other ground.

It is argued further that it has been decided that legacies paid are not proper items for executors' accounts to the Probate Court, and that hence *Hardy* v. *Yarmouth* is wrong in holding that an account showing a transfer allowed by the Probate Court is a prerequisite to a transfer for taxation purposes. Reliance is placed on *Granger* v. *Bassett*, 98 Mass. 462, in support of this

proposition. In that case the question was as to the effect of a probate account upon the rights as between themselves of residuary legatees in the residuum of the estate. It did not relate to the matter of taxation. One point at issue was whether a division of residuum among several distributees was to be settled by a decree upon an account, and it was held that it was not. The language used on page 469 must be read, as apparently it was intended, as applying to the precise question decided, and not as stating an abstract generalization. It is obvious, both from the tenor of the bonds of the executors then in force (Gen. Sts. c. 93, § 2) as well as from the language and decision of many early and later cases, (see, for example, *Minot* v. *Amory,* 2 Cush. 377, 390; *Miller* v. *Congdon,* 14 Gray, 114; *Hall* v. *Cushing,* 9 Pick. 395; *Eliott* v. *Sparrell,* 114 Mass. 404, 406; *Crocker* v. *Dillon,* 133 Mass. 91, 95, 101; *White* v. *Ditson,* 140 Mass. 351, 355; *Welch* v. *Adams,* 152 Mass. 74; *Shores* v. *Hooper,* 153 Mass. 228; *Brigham* v. *Morgan,* 185 Mass. 27, 45; *Bassett* v. *Granger,* 140 Mass. 183; *Little* v. *Little,* 161 Mass. 188, 202; *Porter* v. *Howe,* 173 Mass. 521; *Cummings* v. *Cummings,* 143 Mass. 340, 344,) that payments of legacies are proper items in the accounts of executors. They have been treated frequently as rightly included in executors' accounts, and questions of importance have been decided arising upon such accounts. There is nothing in *Cowdin* v. *Perry,* 11 Pick. 503, to show that a charge in an executor's account of the payment of a legacy was improper, as a matter of accounting. The point of the decision was that the rights of a legatee were not concluded by such an account. The court said at page 512, "The object of such accounting by the executor, before the judge [of probate], is to show that he has paid according to his charges; and upon producing proof of the fact of payment, such charge is allowed. But whether such payment is rightful, is a question for which the executor himself stands responsible. To hold that an allowance of a payment in account, under such circumstances, would bar a legatee whose legacy is not yet payable, would be pressing the doctrine of *res judicata* beyond all reasonable limits." An executor occupies a dual position, one of direct liability to the legatees, the other of fidelity to the court which appoints him. His liability to the legatee can be satisfied only by payment. For this an action at law is given

to the legatee.   R. L. c. 141, § 19.   This remedy is not affected
by the allowance of a probate account showing that the legacy
has been paid, unless under such circumstances as amount to an
estoppel.   Fidelity to the court requires the executor conformably
to the tenor of his bond to administer according to law and to the
will all the estate which comes to his hand, and to render "a
true account of his administration at least once a year until his
trust is fulfilled."   R. L. c. 149, § 1, cl. 3.   In order to satisfy
fully this obligation, the accounts rendered to the Probate Court
should show truly all payments of legacies given by the will, as
well as the performance of other duties of settlement of the estate.
The provisions of the collateral inheritance tax, St. 1909, c. 490,
Part IV, §§ 21, 23, now impose certain special duties upon the
Probate Court as to legacies and ascertainment of their amount.
These obligations of an executor to legatees and to the court are
several, performance of one of which does not necessarily satisfy
the other.   It is not essential here to determine how an executor
might have protected himself in the distribution of such a legacy
as was before the court in *Granger* v. *Bassett,* to be divided among
several, before St. 1895, c. 134, now R. L. c. 141, § 22.   See also
R. L. c. 150, § 19.   Neither *Granger* v. *Bassett,* 98 Mass. 462, nor
*Cowdin* v. *Perry,* 11 Pick. 503, are authority for the proposition
that the Probate Court has no right to require evidence in the form
of a sworn statement that all the duties of an executor includ-
ing the payment of legacies have been performed before his final
account is allowed, nor that payments of legacies are not proper
items in accounts.   The many cases cited above distinctly show
the contrary.   Without shaking the authority of either of those
cases in the light of the statutes then existing, they are plainly
distinguishable.   Upon those points they are of less present value
since R. L. c. 141, § 22, and c. 150, § 19.   Moreover, whatever
doubt may have existed as to the propriety of including distribu-
tive payments in an administrator's account was put at rest in
its favor by *Palmer* v. *Whitney,* 166 Mass. 306.   Apparently it was
assumed in *Libby* v. *Todd,* 194 Mass. 507, that legacies stood
on the same footing in this respect.

*Carleton* v. *Ashburnham,* 102 Mass. 348, is relied on as incon-
sistent with *Hardy* v. *Yarmouth.*   But in that case there was
no question of transfer from fiduciaries acting in one capacity

to the same fiduciaries in another capacity. It was the common case of a final distribution of an intestate estate after its complete settlement with full notice to the assessors before the tax was laid. It is put on the practical ground that the statute could not be construed as requiring in every intestate estate a formal account in the Probate Court, although there had been in fact a complete distribution among the heirs at law. It is to be noted also that in that case the tax had been abated. This case lends no color to the proposition that *Hardy* v. *Yarmouth* has been overruled thereby, or to the theory that in the course of the settlement of a large estate involving partial transfers from persons as executors to the same persons as trustees a matter of bookkeeping may suffice.

Finally it is argued that *French* v. *Hall,* 198 Mass. 147, will be overruled by an adherence to the rule of *Hardy* v. *Yarmouth.* But clearly that result will not follow, for in *French* v. *Hall,* at 153, *Conkey* v. *Dickinson,* 13 Met. ' 51, upon the authority of which *Hardy* v. *Yarmouth* was decided, and *Crocker* v. *Dillon,* 133 Mass. 91, where are reviewed several earlier cases respecting executors' accounts with items of legacies paid, are affirmed and distinguished. *French* v. *Hall* related to two separate and distinct estates, and not to taxation nor to distribution of a single estate. Its decision did not affect the principle of *Hardy* v. *Yarmouth,* nor will it be overruled by adherence to that principle. *Cotton* v. *Boston,* 161 Mass. 8, is not inconsistent with *Hardy* v. *Yarmouth* in any respect. It simply decided that when an executor actually continued to carry on the shop of his testator as he had done during his life, the stock of goods was taxable under clause 1, and not under clause 7 of Pub. Sts. c. 11, § 20, now St. 1909, c. 490, Part I, § 23.

There is much to be said in favor of the rule established by *Hardy* v. *Yarmouth,* if the question was new. It is simple, and easily understood. Neither the ordinary assessor, tax gatherer or taxpayer can be in doubt as to what it means nor as to the result of its application. It is based on publicity respecting subjects of taxation. This of itself is no insignificant advantage in a Commonwealth whose fundamental law requires equality of taxation. It is easy of comprehension, both by executors and assessors. Compliance with it is not difficult. Executors do not

need to couple with their account of transfer of property coming within its operation other items involving controversy and delay. Experience of these many years during which it has been regarded as law does not appear to have revealed the obstacles to its just enforcement which have been suggested in argument.

But whatever may be said respecting its inherent merits, it has been established. It ought not to be lightly disturbed. Stability of interpretation is signally desirable in matters relating to taxation. A shifting policy in this regard would be fraught with unusual misfortune. The reasons in favor of the doctrine of *stare decisis* are especially forceful in a case like this. *Mabardy* v. *McHugh*, 202 Mass. 148. *Hardy* v. *Yarmouth* was a tax case decided upon a statute in all material respects like the present one. It has been treated as the law of the Commonwealth for nearly half a century. The Legislature has revised the laws relating to taxation several times, but always has left unchanged its provisions as thus interpreted. It cannot be doubted that large sums of money have been paid in taxes and valuable rights affected under its terms. It concerns a subject of vital importance to the administration of public affairs. No valid reason appears to us to demand its change.

The conclusion is that *Hardy* v. *Yarmouth* has not been overruled. Continued adherence to the rule it established will not overrule any of our cases. No sound argument has been advanced which warrants its being overruled. Being applicable to the present cases, it is reaffirmed. It has established by judicial interpretation the meaning of the words of said clause 7 of our tax law requiring continued assessment of the estate of a deceased person to the executor in the city or town where the testator dwelt "until it has been distributed." The meaning is that where a part or the whole of the estate given to the same person or persons as trustees, who are also executors, there must not only be some definite, unequivocal and final act of transfer from the executor to the trustee, but such act before it can become "authoritative and notorious" (*Newcomb* v. *Williams*, 9 Met. 525, 535) must be shown by an account duly filed and allowed by the Probate Court.

3. It follows that the acts performed by the executors in the transfer of property to themselves as trustees fall short of accom-

plishing a distribution for the purposes of taxation within the meaning of St. 1909, c. 490, § 23, cl. 7.

4. It is urged, however, that the account of the executors filed in August, 1910, and allowed by the Probate Court the following November, which showed this distribution as made in February, 1910, related back to the latter date, and rendered the distribution efficacious for the purposes of taxation in April, 1910. Although in some respects as applying to other circumstances this argument would be sound, it is answered as to this case by what has been said. The "authoritative and notorious act," which is necessary to effect a distribution, is not completed until the account is allowed by the Probate Court. As this did not occur until after April, 1910, there had been no distribution at the time it was necessary to levy the tax.

5. The petitioners are not precluded by giving notices and filing lists from maintaining their several petitions. A petition for an abatement is the proper form of remedy, even though the entire tax may have been assessed illegally. *Milford Water Co.* v. *Hopkinton*, 192 Mass. 491.

6. In some of the cases at bar the assessors of the respondent municipalities have appeared and answered. They are not proper parties in cases like the present. The aggrieved taxpayer first applies to the assessors as a quasi judicial tribunal for an abatement of his taxes. On appeal his complaint runs against the city or town. See *Cheney* v. *Dover*, 205 Mass. 501, 503; *Welch* v. *Boston*, 208 Mass. 326.

In accordance with the terms of the several reports, let the entries be:

> *In the petition against the city of Boston: Judgment is to be entered for the city of Boston for its expenses and costs.*
>
> *In the petition against the city of Beverly: The petitioners are entitled to an abatement and judgment is to be rendered for them for $73,174.50 together with interest and costs.*
>
> *In the petition against the town of Brookline: The petitioners are entitled to an abatement and judgment is to be rendered for them for $30,697.70 together with interest and costs.*
>
> *In the petition against the town of Milton: The petitioners are entitled to an abatement and judgment is to be rendered for them for $10,236.75, together with interest and costs.*