SPRINGFIELD SAFE DEPOSIT AND TRUST COMPANY, trustee,
*vs.* FIRST UNITARIAN SOCIETY & others.

Hampden.    June 25, 1935. — February 25, 1936.

Present: RUGG, C.J., FIELD, DONAHUE, LUMMUS, & QUA, JJ.

*Trust,* Investments.    *Devise and Legacy,* Construction of particular
phrase.    *Words,* "Separately invested."

Statement by RUGG, C.J., of the rule governing trustees' investments.

It was not as matter of law an improper investment of trust funds by a
trust company to combine several of them in a single loan secured by
a mortgage running to it without designation as trustee, if the hold-
ing of the mortgage in trust, the identity of each of such funds and
the amount of the interest of each in the loan were shown by the
books of the company's trust department and there was filed in the
portfolio of each a certificate of participation in the loan and mortgage.

A provision in each of three memorial bequests in a will in trust for the
same beneficiary, that "the amount of this bequest shall be kept
separately invested," was construed as meaning that the three funds
should be kept separate each from the others as memorials of the
different persons named, and not as forbidding the investment of part
of one of them in a certificate of participation in a mortgage loan.

A trustee, having invested a fund in a first mortgage of real estate appar-
ently safe when taken was *held* not to be chargeable with a loss on its
foreclosure due to a general decline in real estate values.

PETITION, filed in the Probate Court for the county of
Hampden on January 16, 1934.

The case was heard by *Davenport,* J.

The case was submitted on briefs.

*H. Robinson & C. S. Lyon,* for the petitioner.

*H. Ritter,* for the respondents First Unitarian Society and
another.

*F. D. Bonner & T. G. Sullivan; C. M. Rogerson & R. W.
Hardy; B. E. Eames & R. G. Wellings;* and *R. Chapin,* by
leave of court, submitted briefs as *amici curiae.*

RUGG, C.J.    This is a petition for the allowance of ac-
counts of the petitioner as trustee of a fund for the benefit
of the First Unitarian Society, otherwise known as Unita-
rian Society of Chicopee, and others under and subject to

the provisions of the will of Sarah E. Spaulding. The total of this fund was $6,000. The period covered by the accounts begins with April, 1909, and ends with October, 1933. The disputed items relate to an investment of $2,000 by the trustee in a "participating interest" in a note and mortgage of William M. Young and losses incurred with respect to that investment, and a reinvestment in a "participating interest" in the Okun note and mortgage of $1,507.72, received as a result of sale upon foreclosure of the real estate covered by the Young mortgage. The objections to these items are (1) that the investment in the participating interest in the Young mortgage was prohibited by the Spaulding will, (2) that the Young mortgage was not proper as a trust investment, and (3) that an investment of trust funds in a participating interest in a mortgage is not warranted as matter of law.

The case was heard upon an agreed statement of facts. The trial judge found the facts thus stated to be true and reported the case upon them as the facts and the evidence and reserved the questions of law involved for the consideration of this court and the entry of appropriate decrees.

The facts relating to the original investment now assailed were these in substance: In 1925 the trust department of the petitioner, from uninvested funds held by it in various trusts, lent $65,000 to William M. Young, a man of substantial means and owner of a considerable amount of real estate, on his note payable on demand after three years with interest at five and a half per cent per annum, payable quarterly, and secured by a first mortgage in usual form on real estate in the business section of Springfield. The assessed valuation of the property for purposes of local taxation was $91,600. The annual rental was $9,600, derived from tenants conducting a motor company, a drug store, a shoe store, and a garage. The officers of the petitioner appraised the land at $100,000 and the buildings at $20,000. The executive committee of the petitioner, consisting of its president and five directors, all men of extensive experience in real estate matters, approved the loan

as a conservative mortgage and a proper investment for the trust estates contributing thereto. The note and mortgage ran to the petitioner without designation as trustee. This method was for the convenience of the various trust estates interested therein and to enable the petitioner as trustee to hold, administer and deal with the note and mortgage for the best interests of the trusts. This method was in accordance with uniform practice of other similar institutions and was the only practicable way to manage such an investment. The money advanced on this note and mortgage was derived exclusively from various trust funds in the control of the trust department of the petitioner; no portion of it belonged to the commercial department of the petitioner. When the loan was made and the necessary funds contributed by the various trust estates from uninvested capital in the several trust estates, proper entries were promptly and duly made upon the books of the trust department of the petitioner showing the sums respectively advanced from each contributing trust estate, the proportion of each contribution to the amount of the note and mortgage, and the face amount of the participating beneficial interest therein received by each contributing trust estate, which participating beneficial interests were evidenced and represented by "Certificates of Interest in Real Estate Mortgage," so called, identical in form, which were on the same date duly executed by the petitioner and placed in the portfolio of each contributing trust estate. These certificates showed that the particular trust estate had a participating interest in the mortgage with a face value equal to the amount contributed by it. They described with particularity the mortgage investment. At all times from that date to the present time, the books of the trust department of the petitioner and the records pertaining to the various contributing trust estates have shown clearly and definitely that this note and mortgage were held by the petitioner as trustee for the various contributing trust estates and that each contributing trust estate had a specific and definite participating beneficial interest therein, measured by the amount of

its contribution thereto and evidenced by the certificates, and at no time had the note and mortgage been considered, treated or dealt with as individual property of the petitioner. A trust certificate showing the participating interest of the Spaulding trust in this mortgage was filed and has been kept in the portfolio of the Spaulding trust and all appropriate entries to that end have been made on the books of the trust department of the petitioner. In 1932, during the depression, it became necessary to foreclose this mortgage. The property was sold at a loss. A new note and first mortgage were taken by the petitioner covering the same property and a new participating interest certificate issued to represent the share of the Spaulding trust on the same plan as before. This was known as the Okun mortgage. The loss thus suffered by the Spaulding trust was in no respect due to the method of holding the Young mortgage or caused by the fact that it was a participating mortgage. The same loss would have occurred if the mortgage had been held entirely by one trust estate. It is stated in the agreed facts: "Investment of trust funds held by corporate fiduciaries in participating interests in mortgages, similar to those held in this trust, have been made since 1892 and continuously thereafter. The aggregate face value of such participating mortgages held by Massachusetts trust companies in various trusts and estates administered by them is approximately $31,500,000 at the present time, consisting of many mortgages of varying amounts divided into a great many participating interests. They are largely held by many trust companies located in Boston, Worcester, Springfield, Quincy, Cambridge, Pittsfield and elsewhere in the Commonwealth, included among which are the six largest trust companies in Massachusetts. In addition to Massachusetts a similar practice has prevailed for many years in many other states in which corporate fiduciaries have held and now hold billions of dollars of these participating mortgages, such states including New York, New Jersey, California, Pennsylvania, Ohio, Wisconsin, Kentucky, Oklahoma, Louisiana, Mississippi, North Carolina, Tennessee, Georgia, South Carolina, Dela-

ware, Maryland, Illinois and Missouri. Of these states
only five have statutes adopted specifically authorizing
these investments." "Continuously throughout this period
and until the present extraordinary depression such invest-
ments have been most satisfactory and no losses on ac-
count thereof were suffered prior to the depression . . . .
The income yield has been high and steady, the rate being
between five and six per cent for the most part, and being
tax exempt in Massachusetts. The mortgages have ma-
tured at early dates. Some mortgages have been upon
demand, others for three years and some as long as five
years. This has enabled frequent adjustment of interest
rates to correspond with current interest rates. The princi-
pal value has been steady. Mortgages generally have not
been marketable like bonds, stocks or certificates of bene-
ficial interest in trusts, upon payment of a small broker's
fee, but have been salable only upon a new examination of
title and the payment of a real estate broker's fee, and in
many instances were so salable only at a discount. This
same rule has applied to mortgages held as in this case."

Conditions which have led to this form of investment
are narrated at some length in the record but need not be
here recited. This device was adopted and has grown in
favor because of the difficulty which corporate fiduciaries
have experienced in obtaining first mortgages upon real
estate in the Commonwealth in amounts small enough to
be held in smaller trusts and to provide the diversifica-
tion desired in larger trusts. The plain inference from
the facts stated is that this form of investment for trust
funds has been regarded as safe and conservative by the
men charged with the responsibility of managing large and
small trusts by trust companies. "The participating in-
terests in mortgages taken by corporate fiduciaries were
practically never found except in the trusts held and man-
aged by the corporate fiduciaries themselves. None were
ever sold to the public generally nor were any available
for the general public. On the other hand, before the
depression, during good times, a public market could have
been easily established and these mortgage interests repre-

sented by participating certificates could have been freely sold to prudent individual investors, but no attempt was made to create such a market inasmuch as the trust companies preferred to retain these mortgages solely within their control and possession, as hereinbefore mentioned. They were, however, similar to the participations issued by conveyancers and title companies and freely purchased by individuals and trustees and, like them, are of the type of investment which a prudent man permanently investing his own money would buy."

The main question to be decided is whether upon the facts thus disclosed on this record the investment of this amount out of the Spaulding trust in a participating interest in a mortgage on real estate in this Commonwealth is warranted as matter of law. The principle of law in this Commonwealth governing the conduct of a trustee in making investments has been established for more than a century. A trustee is required to conduct himself faithfully and to exercise a sound discretion, and to be enlightened by observance as to how men of prudence, discretion and intelligence manage their own affairs, not in regard to speculation but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of the capital. Good faith and sound discretion, informed by experience and wise observation, constitute the standard. That standard is comprehensive and remains fixed. It is not bound to particular classifications of securities, but continues as a safe guide under changed financial institutions and business customs, usages and investment combinations. *Harvard College* v. *Amory*, 9 Pick. 446, 461. *Kimball* v. *Whitney*, 233 Mass. 321, 331–333, and cases collected and reviewed. *Creed* v. *McAleer*, 275 Mass. 353, 357. *First National Bank of Boston* v. *Truesdale Hospital*, 288 Mass. 35. *Old Colony Trust Co.* v. *Comstock*, 290 Mass. 377, 381.

The facts set forth in the record and already summarized show that the kind of investment here assailed comes within the rule governing trust investments as just stated. Participating interests in mortgages have been approved as in-

vestments for trust funds held by trust companies by the consensus of opinion among the responsible officers of trust companies covering a considerable time and a large area of the country. Investments of that nature cannot be condemned under our rule so far as they rest upon good faith, sound discretion, and conformity to custom.

The precise question is whether as matter of law such investments are permissible. That question has not arisen hitherto in this Commonwealth. Investment of trust funds in securities of this nature has been upheld in other jurisdictions. The general principle is found in Am. Law Inst. Restatement: Trusts, in § 227, comment j, in these words: "The mere fact that trust funds are combined with funds not held in trust or with funds of other trusts in making investments does not necessarily make the investments improper, provided that the investments are in other respects proper. Thus, an investment of trust funds in a participating interest in one or more first mortgages on land, or in a group of securities which are all proper trust investments, may be a proper trust investment. Such investments are not proper if they are not such as a prudent man would make of his own property having primarily in view the preservation of the estate and the amount and regularity of the income to be derived . . . ." It was said in *Matter of Union Trust Co.* 219 N. Y. 514, 519: "The advantages that are frequently to be secured by combining trust funds to make a large and more satisfactory investment than can be made of the funds of one trust without combination are of sufficient importance and value to the several trust funds to overcome any disadvantage that may arise from the fact that the several owners of the investment may thereafter differ in the matter of handling the same. Trust funds have been from time to time combined for investment with satisfactory results and the practice is generally recognized as proper for a trustee." See also *Barry* v. *Lambert*, 98 N. Y. 300. These decisions were rendered before the enactment of any statute in New York authorizing such investments. See now N. Y. Laws, 1933, c. 321, § 1; N. Y. Laws, 1934, c. 838,

§ 2. To the same effect is *Bowden* v. *Citizens Loan & Trust Co.* 194 Minn. 113. *Matter of Flint,* 240 App. Div. (N. Y.) 217. While *Webb* v. *Jonas,* 39 Ch. D. 660, and *In re Dive,* [1909] 1 Ch. 328, may have a different aspect, their facts were quite diverse from those here presented. It is not necessary to determine how far they might be followed in matters to which they are applicable.

Individual trustees ought to be scrupulously careful not to make investments of trust funds in their own names but always to indicate that they are made in a trust capacity. They are held to strict liability for violation of this duty. *Sparhawk* v. *Sparhawk,* 114 Mass. 356. See *Brown* v. *Dunham,* 11 Gray, 42, and *Day* v. *Old Colony Trust Co.* 228 Mass. 225, 229. But the books of account of the petitioner, the stringent provisions of statute as to the separation of trust investments, and the constant public supervision of its affairs show that no harm has come to the beneficiaries. It was said in *Matter of Union Trust Co. of New York,* 219 N. Y. 514, 518: "Declarations of trust when full, complete and open to inspection in a public office or where they are full and complete and in the possession of the parties interested in the investments so that the rights of the several persons or trusts therein can be fully established thereby are sufficient to answer all objections made upon an accounting to the form of the investments theretofore made of the trust funds."

The petitioner was authorized by law to act as trustee of the fund in question. It was subject to the provisions of G. L. c. 172, §§ 49, 52, 53, 54 (now amended by St. 1934, c. 349, § 24,) and § 59. It had a trust department. It was bound by § 49 to keep the business of its trust department separate and distinct from its general business. The money, property or securities received, invested or lent in that department are special deposits protected by extraordinary safeguards and not mingled with other property or liable for general debts or obligations of the trust company. It must be presumed that there has been compliance with all these specific provisions for segregation and safety of trust funds. It was the duty of the petitioner in common with

other trust companies maintaining trust departments to make frequent returns to the commissioner of banks. It was subject to constant supervision and examination by the commissioner respecting its trust department. These statutory provisions are rigidly enforced for the protection of beneficiaries of funds in the trust department; their paramount rights are fully recognized. *Commissioner of Banks* v. *Cosmopolitan Trust Co.* 240 Mass. 254. *Morrison* v. *Lawrence Trust Co.* 283 Mass. 236, 239. The books of the petitioner in connection with these statutory provisions sufficiently segregated the funds in question to protect the beneficiaries under the trust.

It is the duty also of trustees holding two or more distinct trust funds to keep them separate and ordinarily not to invest them together. *Lannin* v. *Buckley*, 256 Mass. 78. That principle has not been violated in the case at bar in its essential features. 'The mortgage was a single investment, but it was divided forthwith by the issuance of the certificates of interest to the several trusts, which became at once a matter of record in its trust department and subject to periodical inspection and examination by the bank commissioner. Objection based on the possibility of transfer of certificates from one trust to another by the trustee, if in good faith, and otherwise not open to just criticism, is without merit. *French* v. *Hall*, 198 Mass. 147, 152.

In the case at bar there is no contention that the petitioner did not exercise good faith and act for a proper purpose. The loss that has resulted to the beneficiaries is not due to conduct of the petitioner or the kind of investment made, but to adverse general financial conditions. In such circumstances there is no liability for breach of trust. *Springfield National Bank* v. *Couse*, 288 Mass. 262. *First National Bank of Boston* v. *Truesdale Hospital*, 288 Mass. 35. Am. Law Inst. Restatement: Trusts, § 179, comment d. The interests of the trust in the investment here assailed are as secure as if the mortgage had been expressed in terms to be to the petitioner as trustee. No general creditor of the petitioner could in any event secure any advantage

over the beneficiaries of the trust. *O'Gasapian* v. *Danielson,* 284 Mass. 27, 32.

The certificates of participating interest in the mortgage were not easily salable. That is an objection to them as trust investments. But mortgages on real estate are not easily salable. The case on this aspect is close, but we are of opinion that the investment cannot be held for this reason to be not a proper trust investment. There is some analogy to the investment in shares in an unincorporated association organized to acquire shares of stock in various street railway and electric light corporations held supportable in *Kimball* v. *Whitney,* 233 Mass. 321.

The investment in question was not in violation of the terms of the Spaulding will. The clause establishing this trust was in these words: "To the Unitarian Society of Chicopee I give and bequeath the sum of Six Thousand Dollars ($6,000). One Thousand Dollars of this I give at the request of and in memory of my deceased aunt, Sarah M. Woodward. The amount of this bequest shall be kept separately invested and the income only may be applied towards the expenses of said Society." Three separate bequests were made in the will for the benefit of the Unitarian Society in Chicopee, each in memory of a different individual. The testatrix by her will created other trusts and omitted the word "separately" when directing how the funds to support those trusts should be kept invested. As matter of interpretation we think the words "separately invested" as applied to the gifts for the Unitarian Society in Chicopee mean that these three funds should be kept separate each from the others to the end that they might be preserved as distinct memorials to the several individuals named. Moreover, this opinion in its main branch shows that the investment of one of these funds in a participating interest in a mortgage was not a commingling contrary to the terms of the will.

The contention is made by the beneficiaries that the Young mortgage was not a proper investment in point of security when originally made in 1925. The circumstances attendant upon making that investment have already been

stated. The amount of the loan seems large in view of what has happened since it was made. The propriety of an investment must be determined with reference to facts and conditions existing at the time it was made and not in the light of subsequent and unforeseen events. The depreciation in the value of the real estate resulting from the depression and the consequent loss on the mortgage occurring after it was taken have no direct bearing on the soundness of the original investment. *Brown* v. *French,* 125 Mass. 410, 416. *Bowker* v. *Pierce,* 130 Mass. 262, 264. *North Adams National Bank* v. *Curtiss,* 278 Mass. 471, 482. No hard and fast rule can be formulated to determine with exactness the amount of a loan on real estate permissible for trust funds. See G. L. (Ter. Ed.) c. 168, § 54. The fair and conservative market value of productive real estate as basis for a loan in its last analysis is matter of opinion. No opinion evidence is set out in the record, except the appraisal of the trust officers and the executive committee of the petitioner. No evidence challenges the soundness of their judgment. The case on this point appears to be close, but we do not think that the loan can be pronounced excessive.

Decree may be entered allowing each account.

*Ordered accordingly.*