## BARKER v. FIRST NAT. BANK OF BIRMINGHAM.

### No. 802.

District Court, N. D. Alabama, S. D.
Aug. 6, 1937.

Smith, Windham, Jackson & Rives, of Birmingham, Ala., and Mahorner & Mahorner, of Mobile, Ala., for plaintiff.

Cabaniss & Johnston, of Birmingham, Ala., for defendant.

DAVIS, District Judge.

On February 26, 1930, the plaintiff, Alleen G. Barker, conveyed to the defendant, the First National Bank of Birmingham, Ala., hereinafter called the bank, certain bonds, stocks, and notes in trust for certain uses and purposes and with the following grant of powers, viz.: "The trustee shall hold and manage said property and such other property as it may subsequently acquire pursuant to the power and authority herein given to it (all of which property will hereinafter be referred to, for convenience as the 'trust estate'), with full power to collect the income therefrom and from time to time to invest and reinvest said trust estate and to sell and exchange investments in such loans, bonds, stocks, or other securities, whether so-called "legal securities" or not, as to said trustee may seem suitable, and to change investments and make new investments from time to time as to said trustee may seem necessary or desirable. The trustee may continue to hold any property or securities originally received by it as a part of this trust estate so long as it shall consider retention thereof for the best interests of said trust estate, regardless of whether such property or securities are a so-called 'legal investment' of trust funds."

The bank is a national bank and has a commercial and a trust department. It has complied with the law requiring that separate books be kept for these departments and that bonds be deposited to secure the trust funds. Parts of the above property were from time to time converted into money, and this money was then invested in mortgage participations. The Tyson and Lewis mortgages were handled initially by the commercial department of the bank, which lent the money to the borrowers at the suggestion of the trust department and took the mortgages to secure same in the name of the bank. Later, when the trust department had accumulated enough trust funds to take over the mortgages and loans, same were transferred by the bank to the trust department and participation certificates were issued by the trust department to the bank as trustee for the plaintiff. However, the trust department was not bound to take over the loans from the commercial department, and on one or more occasions had refused to take over similar loans. The commercial department received the accrued interest for the period between the making of the loans and the transfers from the bank to the bank as trustee. These transfers to the bank as trustee were not recorded until after this suit was filed, and, prior to the recording, the bank appeared of record to own the mortgages.

The bank as trustee issued to the plaintiff certificates, signed by Mr. Zukoski, vice president, certifying that the bank as trustee for the plaintiff owned specified amounts in both the Tyson and the Lewis mortgages. These certificates were placed by the bank as trustee in the portfolio containing the papers of this trust, and the following entries were made on the books of the trust department: A mortgage loan record was kept as to all trust items, consisting of a control sheet showing the entire item or loan, gross payments and disbursements for account of the items, and a separate sheet

showing the participation of each trust in the item and at all times the amount of each separate interest in the item.

The other mortgage participations were handled in the same way, except that they were first issued to the other estates for which the bank was also trustee and thereafter, when said other estates were wound up or had some definite need for funds, were transferred by the bank as trustee for said other estates to itself as trustee for the estate of plaintiff.

The plaintiff, from 1930 until this suit was filed, regularly received semiannual statements of the account from the trust department, in which it appeared that the bank as trustee had purchased various participations in mortgages, setting out as to each purchase the name of the mortgagor, the amount of the total loan and mortgage, the amount of plaintiff's trust's participation, and the amount of interest to which plaintiff's estate was entitled. Plaintiff received the benefits from these investments in mortgage investments and made no complaint until this suit was filed.

All of the actions of the bank were in good faith, and any loss to the cestui que trust was caused by the general decline in business conditions and not by any act of the bank.

The bank, in accordance with a widespread banking practice followed by many other banks, had handled trust funds in the manner above outlined for more than twenty years.

■ At the outset, it may be stated that the relation between a trustee and its cestui is the most intense fiduciary relation in our law. The trustee is required to use the skill of a person of ordinary intelligence in making investments, and, if he possesses more skill than that of the ordinary person, he must use the skill that he has at his command. In all his acts as trustee, he must display complete loyalty to the interests of his cestui que trust. *All personal or selfish interests and all consideration of the interests of third parties must be excluded.* His must be an undivided loyalty.

The standards by which a trustee's actions must be judged were ably set forth in the by now famous statement by Judge Cardozo in the case of Meinhard v. Salmon, 249 N.Y. 458, 464, 164 N.E. 545, 546, 549, 62 A.L.R. 1. "Many forms of conduct permissible in a workaday world for those act-

ing at arm's length are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctillio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. *Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions.* * * * Only thus had the level of conduct of fiduciaries been kept at a level higher than that trodden by the crowd." (Italics supplied.)

Here, the plaintiff claims, first, that the bank violated its duty as trustee by buying participations in real estate mortgages for the trust estate. The mortgage participations here involved are of the simplest form. The trustee would buy a single mortgage and issue certificates of participation therein to itself as trustee for plaintiff and for other estates.

We are not here concerned with the question of whether or not these participations are what are sometimes called "legals." The trust instrument itself authorizes the investment of trust funds in "securities whether so-called legal securities or not." There is a conflict of authorities as to whether or not a trustee may properly invest trust funds in participation mortgages. The reasons for and against such investments are set forth in the following articles and cases cited therein, viz.: Scott, Trustee's Duty of Loyalty, 49 Harvard Law Review, 544–45; 3 Bogert, Trustees and Trusts, § 676, pp. 2024–2030, 45 Yale Law Review, 859, 879.

■ There are very strong arguments for and against allowing investment of trust funds in such securities. I do not, however, deem a decision of this question necessary in this case. The defendant acted in good faith in making these investments. The loss was not caused by the fact that the investments were in participations. The defendant bank in 1930, and semiannually thereafter, sent plaintiff statements showing that the bank had invested in these participations, the amount of such investments, and the income therefrom. The plaintiff received the benefit of the income from them for some four years and made no complaint as to the type of investment. This constitutes a ratification of same. See In re Guth-

rie's Estate, 320 Pa. 530, 182 A. 248, 103 A.L.R. 1186.

■ , Second, the plaintiff claims that the defendant violated its duty as trustee by carrying the record title to the mortgages, out of which it allocated the participations, in its own name individually and not as trustee. As a general rule, a trustee cannot invest trust funds in his own name. DeJarnette v. DeJarnette, 41 Ala. 708; Restatement of the Law, Trusts, A.L.I., vol. 1, P. 456, § 179. The authorities are not in agreement on the question of whether or not the trustee commits a breach of trust by carrying record title to mortgages, from which participations are issued, in the individual name of the trustee, while keeping a book record as was done in the present case. The Massachusetts court in the case of Springfield Safe Deposit & Trust Co. v. First Unitarian Society, 200 N.E. 541, held that where an investment was made in good faith and was otherwise proper, designating the trust property as was done in the present case would not amount to a breach of trust. On the other hand, the Connecticut and Pennsylvania courts, in the cases of Chapter House Circle, etc., v. Hartford National Bank & Trust Co., 121 Conn. 558, 186 A. 543, 106 A.L.R. 260, and In re Guthrie's Estate, 320 Pa. 530, 182 A. 248, 103 A. L.R. 1186, respectively, held that this would constitute a breach of trust. In the two latter cases, it was decided that where the property had been purchased in good faith, the trustee had exercised the required degree of skill in making the investment, and the loss had not accrued because of the fact that the record title had been taken in the name of the trustee individually and not as trustee but because of the unprecedented general decline in business conditions, the breach was merely technical and the trustee could not be surcharged for same. I am impressed with the soundness of the opinion in the Chapter House Circle, etc., Case, supra, and without reiterating the grounds of said decision, hold that the manner of holding title to the trust investments in the present case constituted a breach of trust, but, as this breach was merely technical and of itself caused no loss, recovery cannot be had for such breach.

■ Third, (a), the plaintiff also claims that the defendant was guilty of disloyalty in buying mortgages for the trust estate from itself in its private capacity. No rule of law is more firmly established than the rule that the trustee cannot buy property from himself for the trust estate. St. Paul Trust Co. v. Strong, 85 Minn. 1, 88 N.W. 256; First Nat'l Bank v. Soloman, 63 F. (2d) 900, 901 (C.C.A. 5th); Magruder v. Drury, 235 U.S. 106, 35 S.Ct. 77, 59 L.Ed. 151. This is true even though the trustee acted in good faith and the investment would be proper if the purchase were from a third person. Scott, The Trustee's Duty of Loyalty, 49 H.L.R. 521, 539, supra. Neither can the trustee purchase securities in his own name, paying the purchase price out of his own funds, and afterward distribute the securities to various estates held by him in trust. Cornet v. Cornet, 269 Mo. 298, 190 S.W. 333.

■ The commercial and trust departments of a national bank are not such separate entities as will permit the trust department to buy property from the commercial department with the trust funds of one of its cestuis. To do so constitutes self-dealing. Restatement of Trust, supra, § 179 (d) p. 179; Magruder v. Drury, supra; Ulmer v. Fulton, 129 Ohio St. 323, 195 N.E. 557, 97 A.L.R. 1170; St. Paul Trust Co. v. Strong, supra.

Judge Hutcheson, in the Soloman Case, supra, said, speaking of one who had deposited his money with a bank in trust for investment, that the depositor had an "absolute right to rely upon it that those funds will not be invested in securities in the sale, promotion, or disposition of which the bank has an interest immediate, contingent or remote." It is true there were elements of haste and imprudence in the Soloman Case, yet the above statement was made positively and without any equivocation.

■ The same principle is supported by the Restatement of Trusts, supra, § 170 (i), in the following language: "A corporate trustee violates its duty to the beneficiary if it purchases for the trust from one of its departments, as where it purchases for the trust securities owned by it in its securities or banking department."

The rationale of this principle is set forth in Scott, The Trustee's Duty of Loyalty, supra, at pages 543, 544, as follows: "It is sometimes contended that a trust company should be permitted to purchase securities for its trusts from its securities or banking department, because it is in a position to judge most wisely as to the value of such securities. If it always acted with

an unbiased judgment, this might conceivably be so. But the difficulty is that it is not in a position to exercise an unbiased judgment. In a sense the difficulties are greater than those which arise in the case of an individual trustee. An honorable individual trustee can hardly help seeing the direct conflict between his own interests and his duty to the beneficiaries. On the other hand, the officers of a trust company owe allegiance to the shareholders as well as to the beneficiaries, and the temptation to favor the shareholders may well be more insidious than the temptation of an individual trustee to favor himself. It seems clear that in both cases self-dealing is too dangerous to be permitted. It has been suggested that there is no harm where the trust company sells securities to itself as trustee if makes no profit thereby, since in that case the beneficiaries are put in a better position than if the securities were purchased from third persons who would receive a profit. One objection to selling the securities at cost is that where the trust company has underwritten the securities it has usually agreed with the other underwriters not to sell at less than the price of the public offering. Quite apart from this, however, there is danger that the trust company may make the trust estates a dumping ground for securities left on its shelves."

The securities having fallen in value, the sales from the bank in its private capacity to itself as trustee for plaintiff can be set aside and the bank can be required to pay back to the estate the purchase price of the sales with interest, even though no profit was made on same and even though the sales were fair exchanges. Scott, supra, at page 541; Magruder v. Drury, supra.

The defendant relies on the cases of Johnson v. Holifield, 82 Ala. 123, 2 So. 753, Elmore v. Cunninghame, 208 Ala. 15, 93 So. 814, and First Nat'l Bank of Birmingham v. Love, 232 Ala. 327, 167 So. 703, as authority for the proposition that Alabama, as a liberal jurisdiction, does not hold a trustee liable for breaches of trust made in good faith, including the selling of trustee's private property to the trust estate. Without going into details as to the holdings in these cases, I will say that they are not apposite, and in view of the statement of the court in the Elmore Case, supra, it is reasonably certain that the doctrine of these cases will not be extended to cases in which the trustee has sold its private property to itself as trustee. The real question here involved is whether the bank owned the mortgages at the time the participation allotments were made. There is no basis for an implied authority in the bank to sell its own property to the trust estate.

The facts in this case disclosed that the titles to the Lewis and Tyson loans and mortgages were in the bank at the time of the allotments. The legal and record titles stood in the name of the bank, the insurance ran to the bank, the record titles stood in the name of the bank, the funds invested in the loans came solely from the commercial department, a period of three months elapsed between the making of the loan by the commercial department and the transfer of the mortgages and loans to the trust department, and during that interval the bank drew the interest from the loans, the trust department was not required to purchase the mortgages and loans and, in fact, the bank owned the Lewis loan prior to the execution of the trust instrument by the plaintiff. These facts are incompatible with ownership, at the time in question, in any one other than the bank.

The other mortgages, in which participations were purchased by the bank as trustee for the plaintiff from itself as trustee for other estates, raise a somewhat different problem. While it is true that the bank individually owned these mortgages at one time, at the time of the purchase of the certificates for plaintiff's estate, the bank had divested itself of all interest in the mortgages and the certificates. It then held the certificates as trustee for other estates. Therefore, it is evident that the purchase of said certificates for plaintiff's estate did not involve a sale from the bank in its individual capacity.

Third, (b), the plaintiff also contends that the trustee committed a breach of trust by selling mortgage participation certificates held by it as trustee for other estates to itself as trustee of plaintiff's estate. The defendant claims this constitutes a breach only in case the transaction is not made in good faith or is unfair. The defendant's position is supported by decisions and comments by recognized authorities on trusts.

In the leading case, French v. Hall, 198 Mass. 147, 84 N.E. 438, 16 L.R.A. (N.S.) 205, there is established the proposition that, where the same person acts as trustee under two separate trusts, a sale of

property by himself as trustee under one of the trusts to himself as trustee under the other trust cannot be set aside if the transaction is fair to both trusts. This case was followed in Springfield Safe Deposit Co. v. First Unitarian Society (Mass.) 200 N.E. 541, where the court said: "Objection based on the possibility of transfer of certain certificates from one trust to another by the trustee, if in good faith and not otherwise open to just criticism, is without merit."

The Restatement, supra, § 170 (q), states the rule as follows: "Duty of trustee under separate trusts. Where the trustee is trustee of two trusts if he enters into a transaction involving dealing between the two trusts, he must justify the transaction as being fair to each trust. If the circumstances are such that the interests of the beneficiaries of the different trusts are so conflicting that the trustee cannot properly deal fairly with respect to both trusts, he cannot properly act without applying to the court for instructions." Prof. Bogert, in his treatise on Trusts and Trustees, vol. 3, page 1724, § 543, citing French v. Hall, supra, as authority, says: "A sale by T, as trustee of the A estate, to T as trustee of the B estate, has been sanctioned where made in good faith."

Citing French v. Hall, supra, Professor Scott, in his article, The Trustee's Duty of Loyalty, supra, at page 533 says: "Where the same person is trustee under two separate trusts, a sale of property by himself as trustee under one of the trusts to himself as trustee under the other trust cannot be set aside if the transaction was fair to both trusts."

This is almost an insurmountable array of authorities, yet none of them reconcile the right of a trustee to represent two trusts in a transaction involving both trusts with the trustee's duty of undivided loyalty to his cestui. The trustee must exclude all consideration of the interest and welfare of third persons. 3 Bogert, supra, § 543, p. 1722; Restatement, supra, § 170 (p). "Unless otherwise agreed, an agent is subject to a duty to his principal not to act on behalf of an adverse party in a transaction connected with his agency." Restatement of Agency, § 391.

If the agent represents two principals in a transaction, the two principals having no knowledge of the common agency, the transaction is voidable at the election of either principal. Restatement of the Law, Agency, A.L.I., § 313 (2).

Here the bank as trustee for A, whose property it sold to itself as trustee for the plaintiff, owed the very highest duty of loyalty to both A and the plaintiff. Its duty as trustee for A was to get the highest price it could for the trust property being sold. In buying the property as trustee for plaintiff's estate, the bank was under the duty of obtaining the property as cheaply as possible. These two duties are unquestionably conflicting and irreconcilable. They require the bank to serve two masters simultaneously, a burden traditionally regarded by the law of trusts as too heavy for the ordinary human being, and after all, the bank is run by human beings. Much as I respect the authorities to the contrary, I cannot bring myself to agree with them. The bank has committed a breach of trust, and the fact that the bank has pursued a course of action for a period of years makes its action as outlined above no less a breach of the equitable principles of trusts. To permit such a violation of the trustee's duty of undivided loyalty would be, paraphrasing Judge Cardozo, to create a dangerously erosive exception to the rigid principles of trust law.

However, it would not be equitable to impose a penalty by way of surcharge where the bank sustains the very definite burden, which it must sustain, of showing that the trustee acted in good faith, and that the sales from one trust to another were in all things fair and not otherwise improper. In re Guthrie's Estate, supra; Chapter House Circle, etc., v. Bank, supra. And by the evidence in this case, the bank has sustained that burden.

A decree will be drawn surcharging the bank for the losses, with interest, in the Tyson and Lewis participations, and relieving the bank of damages in the other participation purchases.